Matthew R. Bainer, Esq. (SBN 220972)
**THE BAINER LAW FIRM**
1901 Harrison St., Suite 1100
Oakland, California 94612
Telephone:  (510) 922-1802
Facsimile:   (510) 844-7701
mbainer@bainerlawfirm.com

Attorneys for Plaintiff Raycheal Tellez

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYCHEAL TELLEZ, individually, and on behalf of other members of the general public similarly situated, and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"),<br><br>        Plaintiff,<br><br>    vs.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC. a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.:  18-cv-2480-CAB (LL)<br><br>**NOTICE OF MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        October 4, 2019<br>Time:       PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br>Courtroom:  4C |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 4, 2019, or as soon thereafter as may be heard, before the Honorable Cathy Ann Bencivengo, in Courtroom 4C of the above-entitled court, located at 221 West Broadway, Suite 4165 San Diego, CA 92101, Plaintiffs Raycheal Tellez,  Sherry Medeiros, Quianna Terry and Danielle Rezendes will, and hereby do, move this Court to:

1.      Preliminarily approve the settlement described in the Joint Stipulation re: Class Action Settlement and Notice of Class Action Settlement (attached as Exhibits "A" and "B," respectively, to the Declaration of Matthew Bainer);

2.      Grant Plaintiff's leave to file their Second Amended Complaint adding Sherry Medeiros, Quianna Terry and Danielle Rezendes as named Plaintiffs to the action pursuant to the terms of the Joint Stipulation re: Class Action Settlement and Notice of Class Action Settlement;

3.      Conditionally certify, for settlement purposes only, the proposed settlement class;

4.      Approve distribution of the proposed Notice of Class Action Settlement to the settlement class;

5.      Appoint Plaintiffs Raycheal Tellez,  Sherry Medeiros, Quianna Terry and Danielle Rezendes as the class representatives;

5.      Appoint The Bainer Law Firm as Class Counsel;

6.      Appoint Simpluris as the claims administrator; and

7.      Set a hearing date for final approval of the settlement.

This Motion is based upon:  (1) this Joint Notice of Motion and Joint Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Matthew Bainer; (4) the Joint Stipulation re: Class Action Settlement; (5) the Notice of Class Action Settlement; (6) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; and (7)

1   other documentary and oral evidence or argument as may be presented to the Court at or

2   prior to the hearing of this Motion.  This Motion is unopposed by Defendant.

3

4

5   Dated: August 30, 2019                    THE BAINER LAW FIRM

6

7                                             By: */s/ Matthew R. Bainer*

8                                                 Matthew R. Bainer
                                                  Attorneys for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**INTRODUCTION** ............................................................................. 1

**FACTS AND PROCEDURE** ........................................................... 2

    A.   Brief Overview of the Litigation ............................................ 2

    B.   Plaintiffs Actively Engaged in the Discovery Process ........................ 4

    C.   The Parties Settled After a Full Day of Arm's Length Negotiations at a Private Mediation ................................................................. 5

        1.   The Proposed Settlement Fully Resolves Plaintiffs' Claims ............... 5

        (a)   Composition of the Settlement Class ................................... 5

        (b)   Settlement Consideration ............................................... 6

        2.   Formula for Calculating Settlement Payments ........................... 7

        3.   Release by the Settlement Class ....................................... 7

**ARGUMENT** ................................................................................... 8

    A.   The Court Should Preliminary Approve the Settlement. .................... 8

    B.   The Settlement Was Negotiated after Plaintiffs' Counsel Conducted a Thorough Investigation of the Factual and Legal Issues .................... 9

    C.   The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel ........... 9

    D.   The Proposed Settlement Is Reasonable Given the Strengths of Plaintiffs' Claims and the Risks and Expense of Litigation. ........... 10

    E.   The Proposed Class Representative Enhancement Payments Are Reasonable. .............................................................. 12

    F.   The Negotiated Attorneys' Fees and Costs Are Reasonable. ........... 13

    G.   The Proposed Class Meets the Requirements of Rule 23. ............... 14

        1.   The Proposed Class Is Sufficiently Numerous and Ascertainable ...... 14

        2.   There are Common Questions of Law and Fact. ........................ 15

| | | | |
|---|---|---|---|
| | 3. | Plaintiffs' Claims Are Typical of the Proposed Settlement Class. | 15 |
| | 4. | Plaintiffs and Their Counsel Will Adequately Represent the Interests of the Proposed Settlement Class. | 15 |
| H. | | Common Issues Predominate Over Individual Issues | 16 |
| I. | | Class Settlement Is Superior to Other Available Means of Resolution. | 17 |
| J. | | The Proposed Class Notice Adequately Informs Class Members About The Case And Proposed Settlement. | 17 |
| **CONCLUSION** | | | 18 |

=

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ............................................................. 13

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ............................................................. 14

*Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D. Cal. 2007) ............................. 10

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) .......................................... 12

*Brown v. Fed. Express Corp.,* 249 F.R.D. 580 (C.D. Cal. 2008) ...................................... 10

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ............................................... 9

*Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236

(N.D. Cal. 2010) .............................................................................................................. 14

*Gonzalez v. Officemax N. Am.*, 2012 WL 5473764 (C.D. Cal. Nov. 5, 2012) ............... 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................. 14, 15, 16

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),

2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ............................................ 9

*In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S.

Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) ............................................................. 9

*In Re Janney Montgomery Scott LLC Fin. Consultant Litig.*,

Case No. 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) ................ 12

*Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012) ................... 10

*Kenny v. Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008) ............................................. 10

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ......................................................... 8

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ..................... 12

*Marisol v. Giuliani*, 126 F.3d 372 (2nd Cir. 1997) ............................................................ 14

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ................................................................... 8

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523

(C.D. Cal. 2004) ................................................................................................................ 8

*Ordonez v. Radio Shack, Inc.*, 2013 U.S. Dist. LEXIS 7868

   (C.D. Cal. Jan. 17, 2013) ................................................. 10

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010)................................... 14

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ............................... 11

*Stanton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003) ................................. 8

*Stevens v. Safeway, Inc.*, Case No. 05-01988, 2008 U.S. Dist. LEXIS 17119

   (C.D. Cal. Feb. 25, 2008)................................................. 12

*Torrisi v. Tuscson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)......................... 8

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ................ 11

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114

   (E.D. Cal. 2009) ........................................................... 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ............................ 12

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010)................... 16

**STATE CASES**

*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121 (2006)............................ 10

*Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715 (2004)......................... 12

*Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012)................... 9, 10

*Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380 (2010) ............... 12

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) .............................. 13

*Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443 (2007).................. 10

*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286 (2010)........................... 10

*Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462 (1981) ............................ 10

*Sav-On Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319 (2004) ........ 10, 12

*Smith v. Super. Ct.*, 39 Cal. 4th 77 (2006) ......................................... 10

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

OTHER AUTHORITIES

Fed. R. Civ. P. 23 .................................................................................... 13, 16

Fed. R. Civ. P. 23(a) ........................................................................... 13, 14, 15

Fed. R. Civ. P. 23(a)(1) .................................................................................. 13

Fed. R. Civ. P. 23(a)(2) .................................................................................. 14

Fed. R. Civ. P. 23(a)(4) .................................................................................. 14

Fed. R. Civ. P. 23(b)(3) .................................................................................. 13

Fed. R. Civ. P. 23(c)(2) .................................................................................. 17

Fed. R. Civ. P. 23(e) ........................................................................................ 8

Fed. R. Civ. P. 23(e)(1)(A) .............................................................................. 7

TREATISES

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) .......................... 8

Manual for Complex Litigation (4th ed. 2004) ................................................... 7

Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004) .......................... 13

*Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) .................. 17

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action*
    *Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1
    (March 2004) ............................................................................................ 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs Raycheal Tellez, Sherry Medeiros, Quianna Terry and Danielle Rezendes and ("Plaintiffs") seek preliminary approval of the Joint Stipulation re: Class Action Settlement and Release,[1] which, if approved, would provide significant monetary relief of a total of $1,750,000[2] for approximately over 22,000 current and former non-exempt in-store employees who worked for Defendant in California.

The basic terms of the Settlement provide for the following:

(1)    A Settlement Class defined all non-exempt employees of Defendant in California at any time from August 1, 2014 through the Date of Preliminary Approval.

(2)    A Class Settlement Amount of $1,750,000. The Class Settlement Amount includes:

(a)    A Net Settlement Amount of approximately $1,001,671.67 ($1,750,000 of the Class Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, requested Class Representative Enhancement Payments and payment to the LWDA), which will be allocated to participating Class Members on a pro-rata basis according to their dates of employment and the number of weeks that each Class Member worked during the Class Period ;

---

[1] Hereinafter, "Settlement" or "Settlement Agreement" as attached as Exhibit "A," to Declaration of Matthew Bainer in Support of Motion for Preliminary Approval ("Bainer Decl"). Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

[2] The Gross total $1,750,000 settlement fund consists of two sub-funds. The first, totaling a gross amount of $1,550,000, will provide monetary relief for claims arising after December 30, 2016, the effective date of a settlement reached in *Moore v. Ulta Salon Cosmetics & Fragrance Inc et al*. United States District Court Central District of California Case No. 2:12-cv-03224, which released the majority claims brought in the instant action for all class members employed during that period. The second fund, consisting of $200,000, provides monetary relief in resolution for claims during the time period of August 1, 2014 to December 30, 2016, during which the release of claims from the *Moore* settlement is operative.

(b)    Attorneys' fees of up to one-third of the Class Settlement Amount, or $583,333.33, and reasonable litigation costs and expenses, currently estimated not to exceed $25,000;

(c)    Settlement Administration Costs, currently estimated to be $69,995, to be paid to the jointly selected class action settlement administrator Simpluris Class Action Settlement Administration ("Simpluris")[3];

(d)    Class Representative Enhancement Payments of up to $5000 each to Plaintiffs Raycheal Tellez, Sherry Medeiros, Quianna Terry and Danielle Rezendes.

(e)    A payment to the LWDA pursuant to the Private Attorney General Act of $50,000.

Plaintiffs and Defendant negotiated the Settlement at arm's length with the assistance of experienced class action employment mediator Tripper Ortman, Esq. of Ortman Mediation.  The Settlement provides relief to Class Members that is fair, reasonable and valuable especially considering the risks inherent in proceeding to trial. The relief offered by the Settlement is particularly notable when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases (*see infra*).  Through this settlement, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial.

For these and other reasons, the proposed Settlement satisfies all criteria for preliminary settlement approval.

## FACTS AND PROCEDURE

### A.    Brief Overview of the Litigation

This Settlement provides for the global resolution of this action and three related actions. These three related actions, *Medeiros v. Ulta Salon, Cosmetics & Fragrance, Inc.* United States District Court, Eastern District of California Case No. 2:18-cv-02947-TLN-

---

[3] *See* Exhibit "C" to Bainer Decl.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    AC, *Terry v. Ulta Salon, Cosmetics & Fragrance, Inc.* United States District Court,

2    Northern District of California Case No. 3:18-cv-07683-JST and *Rezendes v. Ulta Salon,*

3    *Cosmetics & Fragrance, Inc.* United States District Court, Northern District of California

4    Case No. 3:18-cv-06111-JST brought causes of action based primarily on, and

5    overlapping with the causes of action and theories of recovery plead herein. (Bainer Decl.

6    ¶2) Pursuant to the terms of the Settlement Agreement, the Parties have agreed to allow

7    Plaintiff leave to file a Second Amended Complaint naming the Plaintiffs from those three

8    cases, all signatories to the settlement agreement on their own behalf,  as named Plaintiffs

9    to this action to allow the settlement of all involved parties to be approved in a single

10   proceeding in front of this Court. (Settlement Agreement ¶ 3.1 and Ex. "A")

11         As part of the relief requested herein, Plaintiff seeks leave to file that Amended

12   Complaint. That pleading exclusively adds all parties to the settlement as parties to this

13   action. It does not add any additional causes of action  to the Currently-Operative

14   Complaint, which alleges violations of (1) unpaid overtime; (2) unpaid minimum wages;

15   (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5)

16   failure to timely pay wages; (6) failure to provide accurate wage statements; (7) failure to

17   indemnify for incurred business expenses; (8) the Private Attorney General Act and (9)

18   unfair competition.

19         Plaintiffs' claims flow from the following core factual allegations:

20

21      •   Ulta required employees to submit to security checks of their persons and
            belongings which, at times, were conducted off the clock in contravention of
22          Ulta's written policies.

23      •   Ulta did not consistently provide non-exempt employees with a timely meal
            or rest breaks, as required under California Law, as a result of its security
24          check policies.

25

26      •   Ulta also did not consistently provide non-exempt employees with off-duty
            meal breaks, as a result of requirements of management level employees.

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

- Ulta required certain employees to perform additional work tasks while off-the-clock and/or incur unreimbursed business expenses.

- As a derivative result of the above allegations, Ulta failed to pay all terminated employees the correct amount of wages earned, maintain accurate employment records  and provide accurate wage statements.

### B.    Plaintiffs Actively Engaged in the Discovery Process.

Plaintiffs have conducted sufficient investigation and discovery in the Action in order to assess the merits and risks of the proceeding to trial with the claims brought herein, and the adequacy and fairness of this Settlement in light thereof.  For example, both parties to this action exchanged Initial Disclosures pursuant to F.R.C.P. Rule 26. Additionally, Plaintiffs in both this action and the related lawsuits served, and Defendant responded to, written discovery in the form of both Special interrogatories and Requests for Documents. Plaintiffs subsequently met and conferred repeatedly regarding the scope of Defendant's production and responses and additional information to be provided. In response to this discovery, Defendant produced policy documents, handbooks, wage and hour records, thousands of pages of class member time records and the contact information for all class members.  Indeed, Plaintiffs had received all written discovery necessary to brief their Motion for Class Certification, in the event the case had not settled.

Additionally, in support of the Parties' settlement negotiations and mediation session, Defendant provided data and information regarding the average hourly rate of pay for Class Members, the total approximate number of Class Members who worked during the Class Period, the total number of former employees during the Class Period and the total number of workweeks worked by Class Members during the Class Period.  (*See*, Bainer Decl. ¶ 4)

Finally, Plaintiffs' Counsel performed an extensive independent investigation into the claims at issue, including (1) determining the suitability of the putative class representatives through interviews, background investigations, and analyses of employment files and related records; (2) researching wage-and-hour class actions

involving similar claims; (3) acquiring information regarding putative Class Members' potential claims, identifying additional witnesses, and obtaining documents in support of Plaintiffs' eventual Motion for Class Certification; (4) obtaining and analyzing Defendant's wage-and-hour policies and procedures; (5) researching the latest case law developments bearing on the theories of liability; (6) researching settlements in similar cases; (7) preparing valuation analyses of claims; and (8) participating in a full-day private mediation session and preparing related memoranda.  The document and data exchanges allowed Plaintiffs' Counsel to assess the strengths and weaknesses of the claims against Defendant and the benefits of the proposed Settlement.  (*See*, Bainer Decl. ¶ 5)

## C. The Parties Settled After a Full Day of Arm's Length Negotiations at a Private Mediation.

After exchanging documents and attending an in-person Early Neutral Evaluation with Magistrate Judge Linda Lopez, the parties attended a mediation with Tripper Ortman, Esq., who specializes in mediating employment disputes, including wage and hour class actions.  As a result of the mediation, the parties were able to reach an agreement on the principal terms of settlement. The parties continued to discuss and negotiate the remaining details over the course of several months.  These negotiations included discussions with Plaintiffs Counsel for all three related cases, all of whom independently reviewed the proposed settlement and determined that the settlement constituted a satisfactory result for the claims brought on behalf of these class members and for their own clients. At all times, the Parties' negotiations were adversarial and non-collusive.  The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue.  (Bainer Decl. ¶ 6)

### 1. The Proposed Settlement Fully Resolves Plaintiff's Claims.

#### (a) Composition of the Settlement Class

The proposed Settlement Classes consist of all individuals who worked for Defendant as a non-exempt, hourly-paid employee in retail stores in the state of California

at any time from August 1, 2014[4] through the Date of Preliminary Approval. (Settlement Agreement ¶¶ 1.8 and 1.29)

### (b)   Settlement Consideration

Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange for two settlement funds in the amount of $1,550,000 ("Settlement Fund – Post Release Net") and $200,000 ("Settlement Fund – Pre Release Net").  The Settlement Fund – Post Release Net  1) includes settlement payments to all Class Members who worked for Defendant between December 30, 2016 through the Date of Preliminary and 2) 88.57% of all payments to Class Members under the terms of this Settlement, Class Counsel Fees (up to and not to exceed one-third, or $583,333.33, of the Gross Settlement Amount), Expenses (not to exceed $25,000) awarded by the Court, the Class Representative Incentive Awards (not to exceed $5,000) approved by the Court, Claims Administration Costs, the LWDA Payment defined below (not to exceed $50,000), and all taxes (employee and employer side) (Settlement Agreement ¶1.31) The Settlement Fund – Pre Release Net includes 1) settlement payments to all Class Members who worked between August 1, 2014 to December 30, 2016 and 2) 11.43% of all payments to Class Members under the terms of this Settlement, Class Counsel Fees (up to and not to exceed one-third, or $583,333.33, of the Gross Settlement Amount), Expenses (not to exceed $25,000) awarded by the Court, the Class Representative Incentive Awards (not to exceed $5,000) approved by the Court, Claims Administration Costs, the LWDA Payment defined below (not to exceed $50,000), and all taxes (employee and employer side) (Settlement Agreement ¶1.32) A premium is appropriate for Plaintiffs since they were the lead plaintiffs, actively supported Plaintiffs' Counsel's efforts on behalf of the class and are executing a full release of claims as part of the Settlement Agreement.

---

[4] The earliest filed of the four related cases, *Rezendes v. Ulta Salon, Cosmetics & Fragrance, Inc.* United States District Court, Northern District of California Case No. 3:18-cv-06111-JST, was originally filed in Alameda County Superior Court on August 1, 2018, hence the use of the commencement of the statutory period in this action as the date for the proposed settlement class period herein.

Subject to the Court approving Attorneys' Fees and Costs, Settlement Administration Costs, and the Class Representative Enhancement Payments, the Net Settlement Amounts will be distributed to all eligible Class Members who do not opt-out of the settlement.  Because the Class Settlement Amount is non-reversionary, 100% of the Net Settlement Amount, less all employee payroll tax requirements and any other applicable payroll deductions required by law, will be paid to eligible Class Members, and without the need to submit claims for payment.

### 2.     Formula for Calculating Settlement Payments

Each Class Member's share of the Net Settlement Amount will be proportional to the number of weeks he or she worked as a Class Member during the settlement fund periods (Settlement Fund – Post Release Net and Settlement Fund – Pre Release Net). (Settlement Agreement ¶3.6.1) The Settlement Administrator will calculate Individual Settlement Payments as follows:

- Defendant will provide to the Settlement Administrator each Class Member's name, social security number, last known address, telephone number(s), the total number of Workweeks worked during the class period and the total number of Workweeks worked during both settlement fund periods.

- To determine each Class Member's estimated Individual Settlement Payment, the Settlement Administrator will divide the net settlement amount for each settlement fund by the total number of workweeks worked during that respective period, and then multiplying that weekly amount by the number of workweeks worked by each Participating Class Member during the that settlement fund period.

- The Individual Settlement Payment will be reduced by any required deductions for each Participating Class Member as specifically set forth herein, including employee-side tax withholdings or deductions. Defendant will pay any employer-side tax payments.

### 3.     Release by the Settlement Class

In exchange for the Class Settlement Amount, Plaintiffs, and Class Members who do not opt out, will release the Released Claims. The Released Claims are those claims

within the applicable statute of limitations period (August 1, 2014 through the date of Preliminary Approval) "arising out of the claims and allegations alleged in the First Amended Class Action Complaint & Enforcement Under The Private Attorneys General Act, California Labor Code Sections 2698 et seq." (Settlement Agreement ¶3.17.2).

## ARGUMENT

### A.      The Court Should Preliminarily Approve the Settlement.

Class action settlements must be approved by the court and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class action settlements involves three steps: (1) preliminary approval of the proposed settlement including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to exclude themselves; and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement. *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

At preliminary approval, the Court first determines whether a class exists. *Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003). Then, the Court evaluates whether the settlement is within the "range of reasonableness." *See*, *generally*, 3 Conte & Newberg, *Newberg on Class Actions*, section 7.20 (4th ed. 2002) § 11.25. "Whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc*., 696 F.3d 811, 819 (9th Cir. 2012).To make this determination at preliminary approval, the Court may consider some or all of the following factors: (i) the extent of discovery completed and the stage of proceedings; (ii) the strength of the Plaintiff's case and the risk, expense, complexity and likely duration of further litigation; (iii) the risk of maintaining class action status throughout trial; (iv) the amount offered in settlement; and (v) the experience and views of counsel. *See Stanton*, 327 F.3d at 959

(citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)). "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (*citing Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

**B.     The Settlement Was Negotiated after Plaintiffs' Counsel Conducted a Thorough Investigation of the Factual and Legal Issues.**

As set forth in greater detail above, based on their analysis of documents produced by Defendant, including policy and procedure documents, time and payroll records and information provided by relevant witnesses, Plaintiffs' Counsel was able to realistically assess the value of Plaintiffs' claims and intelligently engage defense counsel in settlement discussions that resulted in the proposed settlement now before the Court. (Bainer Decl. ¶¶ 3-5) By engaging in a thorough investigation and evaluation of Plaintiffs' claims, Plaintiffs' Counsel can knowledgeably opine that the Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation and various defenses asserted by Defendant.

**C.     The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel.**

The Settlement is result of arm's-length negotiations. The Parties participated in a private mediation session with Tripper Ortman, Esq., who helped to manage the Parties' expectations and reach a compromise agreement.[5] The Parties were represented by

---

[5] *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement), *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S. Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) (same); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.") At all times, the Parties' negotiations were adversarial and non-collusive.

experienced class action counsel throughout the negotiations resulting in this Settlement. Plaintiffs in this and the three related actions, were represented by The Bainer Law Firm and their associated co-counsel, all seasoned class action counsel who regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions.  (*See generally* Bainer Decl.)  Defendant was represented by Littler Mendelson, P.C., a nationally respected defense firm.

### D.     The Proposed Settlement Is Reasonable Given the Strengths of Plaintiffs' Claims and the Risks and Expense of Litigation.

Plaintiffs evaluated the claims in light of the risks of continued litigation in order to determine a reasonable range of class relief.  Although Plaintiffs believe the class claims are strong, Defendant disputes liability and the appropriateness of class certification (for all purposes other than settlement) and have vigorously defended the action and would certainly continue to do so, absent settlement.  Plaintiffs recognize that if the litigation had continued, they may have encountered significant legal and factual hurdles that could have prevented the Class from obtaining any recovery.  To be sure, a number of cases have found wage and hours actions to be especially amenable to class resolution.[6]  However,

---

[6] *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012) ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment . . .  The theory of liability – that [the employer] has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law - is by its nature a common question eminently suited for class treatment."). Litigation of wage and hour claims on class-wide bases (1) encourages the vigorous enforcement of wage laws (*Smith v. Super. Ct.*, 39 Cal. 4th 77, 82 (2006)); (2) "eliminates the possibility of repetitious litigation" (*Sav-on Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319, 340 (2004)); (3) affords small claimants a method of obtaining redress (*id.*); (4) "deter[s] and redress[es] alleged wrongdoing" (*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1298 (2010)); (5) "avoid[s] windfalls to defendants (*Brinker*, 53 Cal. 4th at 1054); (6) avoids "inconsistent or varying adjudications" (*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121, 129 (2006)); and (7) alleviates the concerns of employees about retaliation (*Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443, 462-63 (2007); *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th at 1308).  These policies are so strongly favored that "class certifications should not be denied [in wage and hour cases] so long as the absent class members' rights are adequately protected."  *Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462, 474 (1981); *see also Sav-On*, *supra*, 34 Cal. 4th 319 (upholding certification of an overtime class action based on a showing that all plaintiffs performed jobs that were highly standardized, and as a result, class members performed

1    some courts have gone the other way, finding that some of the very claims at issue here—

2    wage and hour issues—were not suitable for class adjudication because they raised too

3    many individualized issues.[7]

4        Some courts have denied certification even when an employer's policies are

5    unlawful on their face.  For instance, in *Ordonez v. Radio Shack, Inc.*, 2013 U.S. Dist.

6    LEXIS 7868, *35-41 (C.D. Cal. Jan. 17, 2013), the court denied certification even though

7    the plaintiff submitted evidence of a facially unlawful policy regarding rest breaks.  The

8    *Ordonez* court concluded that the predominance and superiority elements were not met

9    based on the employer's presentation of anecdotal evidence of lawful compliance

10   notwithstanding the unlawful policy.  *Id*. at *38-40.

11       As the above examples illustrate, the prospect of certifying a wage and hour action

12   is always uncertain, and the risk of being denied class certification militates in favor of

13   settlement.  A denial of class certification effectively forecloses continued litigation, as

14   neither the individual nor his or her attorney will have any incentive to proceed with an

15   individual case when such small claims are at stake.  *See In re Baycol Cases I & II*, 51 Cal.

16   4th 751, 758 (2011) (explaining that a dismissal of class claims is effectively the "death

17   knell" of the case, despite survival of individual claims).  In other words, for cases where

18   individual damages are relatively small, denial of class certification results in a near-

19   _____

essentially the same tasks, most of which were non-exempt as a matter of law).

20   [7] *See Duran v. U.S. Bank National Association*, 59 Cal. 4th 1, 31 (2014) (reversing a verdict from a class
     trial); *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (affirming denial of certification

21   because employees' declarations attesting to having taken meal and rest breaks demonstrated that
     individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, 2013 U.S. Dist.

22   LEXIS 137792, at *30-41 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of
     proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate*

23   *Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and
     rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez*

24   *v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed.*
     *Express Corp.,* 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest

25   period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641,
     645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*,

26   245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues
     predominated when different employee stations provided different practices with respect to meal

27   periods).

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  complete loss for Plaintiffs as well as no recovery for the employees, who are shut out of

2  the action.  Thus, if the putative Class had not been certified, the value of Plaintiffs' case

3  would have been reduced to a fraction of the value of this Settlement; indeed, Defendant

4  would have likely offered no money to settle the class-wide claims if certification had

5  been denied.

6        In summary, although Plaintiffs and their counsel maintain a strong belief in the

7  underlying merits of the claims, they also acknowledge the significant challenges posed by

8  continued litigation through certification and/or at the merits stage.  Accordingly, when

9  balanced against the risk and expense of continued litigation, the settlement is fair,

10  adequate, and reasonable.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.

11  1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an

12  abandoning of highest hopes").

13        **E.     The Proposed Class Representative Enhancement Payments Are**
14              **Reasonable.**

15        At final approval, Plaintiffs will request Court-approval of a Class Representative

16  Enhancement Payments of $5,000 each to Plaintiffs Raycheal Tellez, Sherry Medeiros,

17  Quianna Terry and Danielle Rezendes. Payments to named plaintiffs for their services as

18  class representatives are customary and generally approved.[8]  Plaintiffs assisted Plaintiffs'

19  Counsel with the preparation of the initial and amended complaints; provided Plaintiffs'

20  Counsel with material evidence regarding the claims; assisted Plaintiffs' Counsel in

21  marshalling the evidence necessary to prosecute the claims on behalf of the Class; and

22  regularly sought reports on the status of the case.

23  _____

24  [8] *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995); *Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380, 1393 (2010); *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715, 726 (2004) (upholding "service payments" to named plaintiffs for their efforts in bringing the case); *Stevens v. Safeway, Inc.*, Case No. 05-01988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 to two class representatives); *In Re Janney Montgomery Scott LLC Financial Consultant Litig.*, Case No. 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) ($20,000 each to three  class representatives).  The incentive award should be approved so long as it is not so high [as] to create a conflict of interest between the representative and class members, or be divorced from the actual value the representative provided to the action.  *Rodriguez v. West*, 463 F.3d at 959-61.

1    Plaintiffs' Counsel believes that no action would likely have been taken by Class
2    Members individually, and no compensation would have been recovered for them, but for
3    Plaintiffs' services on the Class' behalf.  Plaintiffs have thus advanced California's public
4    policy goal of enforcing wage and hour laws.  *See Sav-On Drug Stores, Inc. v. Super. Ct.*,
5    34 Cal. 4th 319, 340 (2004).  It follows that the proposed Class Representative
6    Enhancement Payments, both for Plaintiffs' services as class representatives, and for their
7    general release of their own claims, is reasonable.

8    **F.    The Negotiated Attorneys' Fees and Costs Are Reasonable.**

9    At final approval, Plaintiffs will seek Court-approval of the negotiated attorneys'
10    fees in the amount of one-third of the common fund, or $583,333.33, and litigation costs
11    currently estimated not to exceed $25,000.  (Settlement Agreement ¶3.3).

12    Plaintiffs' request for attorneys' fees in the amount of one-third of the common
13    fund is reasonable under California law.  "In diversity actions, federal courts look to state
14    law in determining whether a party has a right to attorneys' fees and how to calculate those
15    fees." *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).
16    The state law governing the underlying claims in a diversity action "also governs the
17    award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).
18    California courts routinely award attorneys' fees equalling one-third or more of the
19    potential value of the common fund.[9]

20    If the Court reduces the attorney fees or costs, the difference between the fees and
21    costs requested and the fees and costs approved by the Court will be deposited into the
22    common fund and distributed to class members.

23
24

25    [9] *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless
26    whether the percentage method or the lodestar method is used, fee awards in class actions average
      around one-third of the recovery.").  Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class
27    Action Settlements:  An Empirical Study, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March
      2004, at 35 (independent studies of class action litigation nationwide have come to a similar conclusion
28    that a one-third fee is consistent with market rates).

### G.     The Proposed Class Meets the Requirements of Rule 23.

Before granting preliminary approval of the Settlement, the Court must determine whether the proposed settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. An analysis of the requirements of Rule 23(a) and 23(b)(3), commonly referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed settlement class is appropriate.

#### 1.     The Proposed Class Is Sufficiently Numerous and Ascertainable.

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Generally, courts will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members).

Here, the proposed Settlement Class consist of any individual employed by Ulta as a non-exempt in-store employee in the state of California at any time from August 1, 2014, to the date that the Court grants preliminary approval of this Settlement. Approximately 22,000 individuals currently fall within this the Settlement Class.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### 2.      There are Common Questions of Law and Fact.

Commonality is satisfied "if there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." *Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998).  Here, all Class Members were employees of Defendant throughout California and were subject to the same employment policies and practices that serve as the basis for Plaintiff's allegations in the Complaint.

### 3.      Plaintiff's Claims Are Typical of the Proposed Class.

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020).  Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

Plaintiffs' wage and hour claims are typical of the proposed Settlement Class because they arise from the same factual basis and are based on the same legal theories applicable to the other Class Members.  Likewise, Plaintiffs' interests are entirely coextensive with the interests of the Class.  Accordingly, Plaintiffs are typical of the Class Members they seek to represent.

### 4.      Plaintiffs and Their Counsel Will Adequately Represent the Interests of the Proposed Settlement Class.

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied if: (1) the proposed representative Plaintiffs do not have conflicts

of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

The Rule 23(a) adequacy requirement is met here as Plaintiffs have represented putative Class Members with a focus and zeal true to the fiduciary obligation that they have undertaken, working closely with their attorneys throughout the case.

Plaintiffs' Counsel also satisfies the Rule 23(a)(4) adequacy-of-counsel requirement. Plaintiffs' Counsel is experienced in wage and hour class litigation and have the credential to serve as adequate class counsel. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

### H.    Common Issues Predominate Over Individual Issues.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. The California statutes relating to each of Plaintiffs' claims apply with equal force and effect to all Class Members. Factually, Defendant's policies and practices apply class-wide and Defendant's liability can be determined by facts common to all members of the class. The wage and hour issues are both numerous and substantial, and a class action is the most advantageous method of dealing with the claims of the Settlement Class Members. *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012) ("Claims alleging that uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment.").

Likewise, the fact that the Settlement affords all Class Members an equal opportunity to obtain compensation for identical claims via a standardized process provides further support for the conclusion that common issues of law and fact predominate and that the claims are amenable to class-wide resolution. *See Amchem Products, Inc. v. Windsor*, 521 U.S. at 619 (rejecting the Third Circuit's holding that the

requirements of Rule 23 "must be satisfied without taking into account the settlement," and finding instead that "settlement is relevant to a class certification.")

## I.    Class Settlement Is Superior to Other Available Means of Resolution.

Similarly, there can be little doubt that resolving all Class Members' claims through a single class action is superior to a series of individual lawsuits.  "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrates the advantages of a collective bargaining and resolution process.

Addressing the allegations through a class action is superior to individual litigation or any alternative methods that may exist.  This action was filed precisely because Plaintiffs believe those alternatives would have proven ineffective in addressing the problem on a class-wide basis.  Additionally, although the value of the claims is not insignificant, the amount in controversy is not nearly enough to incentivize individual action. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class certification").  As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Settlement Class proposed by the Parties is appropriate.

## J.    The Proposed Class Notice Adequately Informs Class Members About The Case And Proposed Settlement.

The Notice of Class Action Settlement ("Class Notice"),[10] jointly drafted and approved by the Parties, provides Settlement Class Members with the information necessary to allow each potential member to make an informed decision regarding his or

---

[10] *See*, Exhibit "B" to Settlement Agreement.

her participation in the Settlement.  The Notice provides information regarding the nature of the lawsuit, a summary of the substance of the settlement terms, the class definition, the deadlines by which Class Members must submit Requests for Exclusion or objections, the date for the final approval hearing, the formula used to calculate settlement payments, a statement that the Court has preliminarily approved the settlement, and a statement that Class Members will release the settled claims unless they opt out.  Accordingly, the Notice satisfies the requirements of Rule 23(c)(2).

If the Court grants preliminary approval, the Settlement Administrator will mail the Class Notice to all Settlement Class Members via first class United States mail. (Settlement Agreement ¶3.8.3).  In the event Notice Packets are returned as undeliverable, the Settlement Administrator will attempt to locate a current address using, among other resources, an address update service such as NCOA or Accurint to obtain an updated address.  (*Id.*).  This method was negotiated by the Parties to maximize the Class Member response rate while ensuring cost effective administration of the Settlement.

The last step in the settlement approval process is the Final Approval Hearing, at which time the Court may hear all evidence and arguments necessary to evaluate the Settlement.  At the Final Approval Hearing, proponents of the Settlement may explain and describe its terms and conditions and offer arguments in support of settlement approval. Class Members may be heard in support of or in opposition to the Settlement.

## CONCLUSION

The Parties have negotiated a fair and reasonable settlement of claims.  Having appropriately presented the materials and information necessary for preliminarily approval, the Parties jointly request that the Court preliminarily approve the settlement.

Dated: August 30, 2019                    THE BAINER LAW FIRM


                                          By: */s/ Matthew R. Bainer*
                                               Matthew R. Bainer
                                               Attorneys for Plaintiffs



        I, Matthew R. Bainer, attest that all other signatures listed, and on whose behalf the filing is submitted, concur in the filing's contents and have authorized the filing.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT