1   Matthew R. Bainer, Esq. (SBN 220972)
     **THE BAINER LAW FIRM**
2   1901 Harrison St., Suite 1100
     Oakland, California 94612
3   Telephone:  (510) 922-1802
     Facsimile:   (510) 844-7701
4   mbainer@bainerlawfirm.com

5   Attorneys for Plaintiffs
     *Additional Counsel listed on next page*
6

7

8                    **UNITED STATES DISTRICT COURT**

                    **SOUTHERN DISTRICT OF CALIFORNIA**
9

10  RAYCHEAL TELLEZ, QUIANNA          Case No. 3:18-cv-02480-CAB-LL
     TERRY, SHERRI MEDEIROS, and
11  DANIELLE REZENDES, an             **NOTICE OF MOTION AND MOTION**
     individually, on behalf of other  **FOR FINAL APPROVAL OF CLASS**
12  members of the general public     **ACTION SETTLEMENT;**
     similarly situated, and as aggrieved **MEMORANDUM OF POINTS AND**
13  employees pursuant to the Private **AUTHORITIES IN SUPPORT**
     Attorneys General Act ("PAGA"),   **THEREOF**
14
                 Plaintiff,           Date:        February 6, 2020
15                                     Time:        10:00 a.m.
         vs.                           Courtroom:   4C
16
     ULTA SALON, COSMETICS &
17  FRAGRANCE, INC., a Delaware
     corporation; and DOES 1through 50,
18  inclusive,

19               Defendants.

20

21

22

23

24

25

26

27

28

PETER R. DION-KINDEM, SBN 95267
**THE DION-KINDEM LAW FIRM**
**PETER R. DION-KINDEM, P. C.**
2945 Townsgate Road, Suite 200
Westlake Village, CA 91361
Telephone: (818) 883-4900
Email: peter@dion-kindemlaw.com

LONNIE C. BLANCHARD, III, SBN 93530
**THE BLANCHARD LAW GROUP, APC**
3579 East Foothill Blvd., No. 338
Pasadena, CA 91107
Telephone: (213) 599-8255
Fax: (213) 402-3949
Email: lonnieblanchard@gmail.com

JAMES R. HAWKINS, SBN 192925
ISANDRA FERNANDEZ, SBN 220482
**JAMES HAWKINS APLC**
9880 Research Drive, Suite 200
Irvine, CA 92618
Telephone: 949.387.7200
Fax No.: 949.387.6676

MATTHEW J. MATERN, SBN 159798
JOSHUA D. BOXER, SBN 226712
**MATERN LAW GROUP, PC**
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266
Telephone: 310.531.1900
Facsimile: 310.531.1901
Emails: mmatern@maternlawgroup.com
 mgordon@maternlawgroup.com

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 6, 2020, at 10:00 a.m. or as soon thereafter as counsel may be heard in Courtroom 4C of the United States District Court for the Southern District of California, located at 221 West Broadway, Suite 4165, San Diego, California 92101, Plaintiffs Raycheal Tellez, Sherri Medeiros, Quianna Terry, and Danielle Rezendes will, and hereby do, move this Court for an order granting final approval of class action settlement in the above-captioned matter.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs respectfully moves for entry of an order:

1.     Granting final approval of the terms of the terms of the proposed class action settlement described in the Joint Stipulation re: Class Action Settlement ("Stipulation") as fair, reasonable, and adequate to all Class Members;

2.     Finding that the Notice of Class Action Settlement distributed to the Class Members pursuant to the Court's order granting preliminary approval constituted the best practicable notice to all Class Members under the circumstances;

3.     Finally certifying the class for settlement purposes only;

4.     Directing that compensation to all Settlement Class Members be effected pursuant to the terms of the Stipulation;

5.     Approving the payment to the California Labor Workforce Development Agency ("LWDA") in the amount of thirty-seven thousand five hundred dollars ($37,500.00);

6.     Approving the Claims Administrator's costs in the amount of $70,000; and

7.     Entering final judgment in the action.

This Motion is based on this Notice, the attached Memorandum of Points

and Authorities, the accompanying declarations of Matthew Bainer, and any exhibits thereto, the complete files and records of this case, the Stipulation, and any other evidence or oral argument which may be considered by the Court at the time of the hearing.

DATED: January 23, 2020          **THE BAINER LAW FIRM**


By:   /s/ Matthew R. Bainer
Matthew R. Bainer
Attorneys for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On October 11, 2019, this Court granted preliminary approval of the proposed class-action settlement between Plaintiffs Raycheal Tellez, Sherri Medeiros, Quianna Terry, and Danielle Rezendes (collectively, "Plaintiffs") and Defendant Ulta Salon, Cosmetics & Fragrance, Inc. ("Defendant" or "Ulta"). (Doc. No. 35.) Plaintiffs now seek an order granting final approval of the Joint Stipulation re: Class Action Settlement ("Stipulation").

If finally approved, the Settlement will create an all-inclusive, non-reversionary settlement fund in the amount of $1,750,000.00. The proposed Settlement will dispose of this action in its entirety as to the following class:

> All non-exempt employees of Defendant in California at any time from August 1, 2014 through the Date of Preliminary Approval (October 11, 2019), and who did not file a timely request to be excluded from the Settlement.

The proposed Settlement is fair, adequate, and reasonable. The Settlement provides substantial benefits to the Class Members when balanced with the strength of Plaintiffs' case and the risks and expense of further litigation. In addition, the Class Members' reaction to the Settlement has been overwhelmingly positive, as, to date, there have been no objections and 220 requests for exclusion. Additionally, the Settlement was reached through mediated arms-length negotiations, sufficient investigation and discovery allowed Class Counsel to act intelligently, and Class Counsel supports the Settlement as being in the best interests of the Class Members. Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Final Approval of Class Action Settlement.

## II.   RELEVANT BACKGROUND

### A. Factual and Procedural Background

This case involves California wage-and-hour claims against Defendant, a beauty-supply retail company. Plaintiffs' claims flow from the following nucleus

of factual allegations:

- Defendant required employees to submit to security checks of their persons and belongings, which, at all times, were conducted off the clock in violation of Defendant's written policies.
- Defendant did not consistently provide non-exempt employees with timely meal or rest breaks, as required under California law, as a result of Defendant's security check policies.
- Defendant did not consistently provide non-exempt employees with off-duty meal breaks, as a result of requirements of Defendant's management-level employees.
- Defendant required certain employees to perform additional work tasks while off-the-clock and/or incur unreimbursed business expenses.
- As a consequence of the above, Defendant failed to pay all terminated employees the correct amount of wages earned, maintain accurate employment records, and provide wage statements.

Based on those factual issues, Plaintiffs brought suits against Defendant in 2018, alleging the following causes of action: (1) unpaid overtime; (2) unpaid minimum wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay wages; (6) failure to provide accurate wage statements; (7) failure to indemnify for incurred business expenses; (8) an enforcement action under the Private Attorneys General Act of 2004 ("PAGA"); and (9) violations of California's Unfair Competition Law ("UCL").

Plaintiff and Defendant reached a settlement (the "Settlement") of the above claims after lengthy negotiations, executing the Stipulation on or around August 14, 2019. (Bainer Decl. ¶6; *see also* discussion *infra* Parts II.B.-C.) The Settlement provided and provides for global resolution of other wage-and hour actions filed against Defendant based on the same facts and legal theories as

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 3:18-cv-02480-CAB-LL

described above.[1] (*See* Stipulation, ¶ 3.1.) On August 30, 2019, Plaintiffs moved for preliminary approval of the Settlement. (Doc. 32.) On October 11, 2019, the Court granted Plaintiffs' motion for preliminary approval, as well as leave to file a Second Amended Complaint ("SAC") to include the plaintiffs from the related actions. (Doc. 35.) On November 4, 2019, Plaintiffs filed the SAC to add named plaintiffs. (Doc. 36.)

### B. Plaintiffs' Investigation of Their Claims and Class Claims

Plaintiffs actively investigated and conducted discovery in this matter in order to sufficiently and intelligently assess the merits of their claims, individually and on behalf of the class, as well as evaluate the risks of proceeding to trial, and the adequacy and fairness of the Settlement. (Declaration of Matthew R. Bainer in Support of Plaintiffs' Motion for Final Approval ("Bainer Decl."), ¶ 3-4.) Parties to this action exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26. (Bainer Decl., ¶ 3.) Additionally, Plaintiffs each propounded discovery, to which Defendant responded, in the form of Special Interrogatories and Requests for Production of Documents. (*Id.*) Plaintiffs and Defendant also repeatedly met and conferred regarding the scope of Defendant's responses and production and additional information to be provided. (*Id.*) Defendant produced, and Class Counsel reviewed, policy documents, handbooks, wage-and-hour records, thousands of pages of time records, and class contact information. (*Id.*) Ultimately, Plaintiffs received all written discovery necessary to brief a motion for class certification had the case not settled. (*Id.*)

Furthermore, in support of the Parties' settlement negotiations and

---

[1] Those actions are *Rezendes v. Ulta Salon, Cosmetics & Frangrance, Inc.*, Case No. 3:18-cv-0611-JST (N.D. Cal.) (filed in Alameda County Superior Court on August 1, 2018); *Terry v. Ulta Salon, Cosmetics & Fragrance, Inc.*, Case No. 3:18-cv-7683-JCS (N.D. Cal.) (filed in Marin County Superior Court on September 18, 2018); and *Medeiros v. Ulta Salon, Cosmetics & Fragrance, Inc.*, Case No. 2:18-cv-2947-TLN-AC (E.D. Cal.) (filed in Solano County Superior Court on September 25, 2018). These are sometimes referred to herein as the related actions.

mediation session, Defendant provided data and information regarding the average hourly rate of pay for Class Members, the total approximate number of Class Members who worked during the Class Period, the total number of former employees during the Class Period, and the total number of workweeks worked by Class Members during the Class Period. (*Id.*)

Finally, counsel performed an extensive, independent investigation into the claims at issue, including (1) determining the suitability of the putative class representatives through interviews, background investigations, and analyses of employment files and related records; (2) researching wage-and-hour class actions involving similar claims; (3) acquiring information regarding putative Class Members' potential claims, identifying additional witnesses, and obtaining documents in support of Plaintiffs' eventual motion for class certification; (4) obtaining and analyzing Defendant's wage-and-hour policies and procedures; (5) researching the latest case law developments bearing on the theories of liability; (6) researching settlements in similar cases; (7) preparing valuation analyses of claims; and (8) participating in a full-day private mediation session and preparing related memoranda. The document and data exchanges allowed Plaintiffs' Counsel to assess the strengths and weaknesses of the claims against Defendant and the benefits of the proposed Settlement. (Bainer Decl. ¶ 4.)

### C. Arm's-Length Settlement Negotiations

After exchanging documents and attending an in-person Early Neutral Evaluation with Magistrate Judge Linda Lopez, the parties attended a mediation with Tripper Ortman, Esq., who specializes in mediating employment disputes, including wage-and-hour class actions. (Bainer Decl. ¶ 5.) As a result of the mediation, the parties were able to reach an agreement on the principal terms of settlement. The parties continued to discuss and negotiate the remaining details over the course of several months. These negotiations included discussions with counsel for related cases that have been resolved under the terms of the Settlement. Plaintiff's counsel in those cases independently reviewed the proposed

Settlement and determined that it constituted a satisfactory result for the claims brought on behalf of these class members and for their own clients. At all times, the Parties' negotiations were adversarial and non-collusive. The Settlement is therefore a fair, adequate, and reasonable compromise of the claims at issue. (Bainer Decl. ¶ 5.)

## III. THE SETTLEMENT

### A. <u>Class Definition</u>

The proposed class consists of all persons employed by Defendant as non-exempt employees in the State of California at any point in time from August 1, 2014 through October 11, 2019 and who did not ask to be excluded. (Stipulation,[2] ¶¶ 1.8, 1.29; Doc. 35, at 3 )

### B. <u>Settlement Terms</u>

Under the proposed Settlement, the claims of all Class Members who did not timely request exclusion from the Settlement ("Settlement Class Members") shall be settled for the Gross Maximum Settlement Amount of one million seven hundred and fifty thousand dollars ($1,750,000.00). (Stipulation, ¶ 3.2.) This amount includes all Individual Settlement Payments to Settlement Class Members; the LWDA Payment; Class Counsel Fees and Expenses as awarded by the Court; the Class Representative Incentive Award as awarded by the Court; Claims Administration Costs; and all federal, state, and local taxes. (Stipulation, ¶ 3.2.) This amount is non-reversionary. (*See* Stipulation, ¶ 3.6.2.4.) The Gross Maximum Settlement Amount shall be allocated as follows:

1. <u>Individual Settlement Awards</u>.

The Net Settlement Amount[3] shall be distributed to the Settlement Class

---

[2] The Parties Stipulation of Settlement id attached to the Bainer Decl. as Exhibit "A".

[3] The Net Settlement Award equals the Gross Maximum Settlement Amount less Class Counsel Fees and Expenses, the Class Representative Incentive Awards, the LWDA Payment, and the Claims Administration Costs. (Stipulation, ¶ 3.6.)

based on the number of workweeks during two separate periods. (Stipulation, ¶¶ 3.6, 3.6.1.) The Net Settlement Amount is to be divided into two funds, 88.57% to "Settlement Fund – Post Release Net" ("Post-Release Funds") and 11.43% to "Settlement Fund – Pre Release Net" ("Pre-Release Funds"). (Stipulation, ¶ 3.6.1.) Payments from the Post-Release Funds shall be calculated based on workweeks from December 30, 2016 through the date of preliminary approval. (Stipulation, ¶ 3.6.1.) Payments from the Pre-Release Funds shall be calculated based on workweeks worked by Settlement Class Members from August 1, 2014 to December 30, 2016. (Stipulation, ¶ 3.6.1.) The Individual Settlement Payments are apportioned 50% to wages ("Wage Component") and 50% to interest, penalties, and any other claimed damages. (Stipulation, ¶ 3.6.1.) Payments are subject to tax withholdings, including employment taxes on the Wage Component. (Stipulation, ¶ 3.6.1.) If an Individual Settlement Award is uncashed after two mailings,[4] the Claims Administrator shall transfer the uncashed funds, plus any accrued interest, to an interest-bearing account to be distributed to the Legal Aid Society of San Diego, Inc. (Stipulation, ¶ 3.6.2.4.) Settlement Class Members are *not* required to submit claims for the Individual Settlement Awards. (Stipulation, ¶ 3.9.)

### 2.   LWDA Payment.

Subject to the Court's approval, fifty thousand dollars ($50,000.00) from the Gross Maximum Settlement Amount shall be allocated to penalties under the Private Attorneys General Act ("PAGA"). (Stipulation, ¶ 3.4.) Of this amount, seventy-five percent (75%), or thirty-seven thousand five hundred dollars ($37,500.00) is to be paid directly to the LWDA. (Stipulation, 3.4.) The remaining twenty-five percent (25%), or twelve thousand five hundred dollars ($12,500.00)

---

[4] Settlement Class Members have one hundred and eighty (180) days from the date of each mailing to cash the checks. (Stipulation, ¶ 3.6.2.4.) Under the Settlement, checks that are uncashed after 180 days from the first mailing are mailed a second time, with another 180 for the checks to be cashed. (Stipulation, ¶ 3.6.2.4.)

is allocated to the aggrieved employees and, pursuant to the Settlement, is included in the Net Settlement Amount. (Stipulation, ¶¶ 3.4, 3.6; *see also* discussion *supra* note 3.) Plaintiff's Counsel has provided the required notice of the proposed approval of this settlement, and release of Plaintiff's PAGA claims, to the LWDA, (Bainer Decl. ¶

### 3. Class Counsel Fees and Expenses.

Subject to Court approval, Defendant agreed not to oppose Class Counsel seeking up to thirty-three percent (33%) or $583,333.33 of the Gross Maximum Settlement Amount for attorneys' fees[5] and up to twenty-five thousand dollars ($25,000.00) for reimbursement of Class Counsel's costs in prosecuting this matter. (Stipulation, ¶ 3.3.) As outlined in the concurrently filed Motion for Attorney's Fees, Costs and Incentive awards, Plaintiff's Counsel has nonetheless elected to seek only twenty-five percent (25%) or $437,500 of the Gross Maximum Settlement Amount for attorneys' fees.

### 4. Class Representative Incentive Award.

Subject to Court approval, in exchange for release of their claims, and in recognition of the time and effort in litigating this matter, Plaintiffs shall be entitled to payment of a Class Representative Incentive Award up to and not to exceed five thousand dollars ($5,000.00) each. (Stipulation, ¶ 3.5.1.) The Class Representative Incentive Award shall be paid from the Gross Maximum Settlement Amount; any difference between the awards sought and the amounts awarded by the Court shall be allocated to the Net Settlement Amount. (Stipulation, ¶ 3.5.1.)

### 5. Claims Administration Costs.

Claims Administration Costs, in an amount not to exceed sixty-nine thousand nine hundred and ninety-five dollars ($69,995.00), shall be paid to the Claims Administrator from the Gross Maximum Settlement Amount. (Stipulation,

---

[5] Plaintiffs' motion for attorneys' fees, filed concurrently herewith, seeks twenty-five (25%) of the Gross Maximum Settlement Amount for Class Counsel Fees.

MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT
CASE NO. 3:18-cv-02480-CAB-LL

¶ 3.12.)

6.   <u>Taxes</u>.

The Claims Administrator shall withhold taxes from payments made under the terms of the Settlement and shall issue W-2 forms for the Wage Component of the Individual Settlement Awards and 1099 forms for other payments made. (Stipulation, ¶¶ 3.5.1, 3.6.1, 3.6.3.)

C. **The Release**

Upon entry of final judgment by the Court, Plaintiffs and all Settlement Class Members will be deemed to have released Defendant and the Released Parties, as defined in the Settlement, from wage-and-hour claims arising from their employment with Defendant from August 1, 2014 through October 11, 2019. (Stipulation, ¶¶ 3.17.2, 3.17.3.) The Released Parties are defined as Defendant and "its insurers, parents, subsidiaries, affiliated companies, charitable organizations, partners, trustees, directors, officers, agents, attorneys, servants, and employees, past and present and each of them." (Stipulation, ¶ 3.17.1.)

IV. **CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH THE REQUIREMENTS OF DUE PROCESS AND RULE 23**

Before the Court may grant final approval of a proposed class-action settlement, adequate notice of the settlement must be provided to the class members. Fed. R. Civ. P. 23(e)(1). Class members should be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice may be by United States mail or other appropriate means. *Id.* The "best notice practicable" does not require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process, but it often includes (as in this case) direct notice to class members who can be identified by regular mail. *See, e.g.*, *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).

For a class certified under Rule 23(b)(3), class notice must "clearly and

concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citations and quotations omitted).

The notice plan, as preliminarily approved by the Court on October 11, 2019, has been implemented by the Claims Administrator. (*See* Stipulation, ¶ 3.8 *et seq.*; *see also* Doc. 35, at 4-5.) On or about November 16, 2019, the Claims Administrator received from Defendant a list containing each Settlement Class Member's full name; last known address; last known home telephone number; Social Security Number; and dates of employment (collectively, "Class Information"). (Declaration of Claims Administrator in Support of Plaintiffs' Motion for Final Approval ("Claims Administrator Decl.") ¶ 6; *see also* Stipulation, ¶¶ 1.8, 3.8.2.) The Claims Administrator received Class Information for 23,987 Settlement Class Members. (Claims Administrator Decl. ¶ 8.) After receiving the Class Information, the Claims Administrator updated the Class Information after performing a search on National Change of Address database. (Claims Administrator Decl. ¶ 8.) On November 25, 2019, 2019, the Notice Packets[6] were mailed to the Settlement Class Members by first-class U.S. mail, with pre-paid postage. (Claims Administrator Decl. ¶ 8.)

220 Settlement Class Members asked to be excluded from the Settlement; there have been 0 objections. (Decl. 13-14.)

---

[6] The Notice Packets include the Court-approved Notice of Class Action Settlement and Change of Address Form. (*See* Stipulation, ¶ 1.23.)

In short, the notice procedures undertaken by the Claims Administrator constitute the best notice practicable under the circumstances, and fully complies with Rule 23 and the requirements of due process.

## V.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

The settlement of a class action requires court approval. Fed. R. Civ. P. 23(e). In determining whether to grant final approval, the Court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2)(C); *Staton v. Boeing Co.*, 327 F. 938, 952 (9th Cir. 2003). To assess the merits of a final settlement in a class action, courts "balance a number of factors," including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court considers the "settlement taken as a whole." *See Hanlon*, 150 F.3d at 1026.

Although the Court has broad discretion in making a final determination that a class-action settlement is fair, the Court's discretion is "limited to the extent necessary to reach a reasoned judgment that the [settlement] is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. A presumption of fairness exists where "the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) In considering whether to grant final approval of a class-action settlement, the Ninth Circuit has recognized "a strong judicial policy that favors settlements, particularly where complex class action

litigation is concerned." *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1011 (9th Cir. 2008). In the end, "[s]ettlement is the offspring of compromise; the question [that the court] addresses is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate[,] and free from collusion." *Hanlon*, 150 F.3d at 1027.

### A. The Proposed Settlement Is Presumed To Be Fair.

The Court should begin its analysis with a presumption that the proposed Settlement is fair and should be approved. "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citations omitted); *see Harris*, 2011 WL 1627973, at *8 ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."). Courts find that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995).

Here, the parties negotiated the proposed Settlement at arm's length with the assistance of an experienced mediator, Tripper Ortman, Esq. (Bainer Decl. ¶ 6.) Significant factual investigation and discovery allowed Class Counsel—who is experienced in wage-and-hour class-action litigation—to assess the strengths and weaknesses of the claims against Defendant and the benefit of the proposed Settlement. (*Id.*) During the course of the litigation, Class Counsel reviewed hundreds of pages of documents produced by Defendant, including relevant wage-and-hour policy documents, obtained a sampling of timekeeping and payroll records, and prepared a damages model based on expert analysis of the time and payroll data and information obtained from Defendant. (Bainer Decl. ¶ 3-5.) Plaintiff and Class Counsel therefore had adequate information to gauge the value of the Settlement Class Members' claims and assess whether the proposed Settlement is fair, adequate, and reasonable. (*See* discussion *supra* Part II.B.) As

discussed further below, Class Counsel supports the Settlement because it achieves a significant result for the Settlement Class Members, particularly in light of the risks of continued litigation. (*See, e.g.*, discussion *infra* Part V.B.3.)

### B. Relevant Criteria Support Final Approval of the Settlement.

In deciding whether to grant final approval of a class-action settlement, courts must determine whether it is "fair, reasonable, and adequate" after considering whether "(a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate; and (d) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). These factors are not exhaustive, however, and should be tailored to each case. *Staton*, 327 F.3d at 959; *see* Fed. R. Civ. P. 23(e)(2) 2018 advisory committee's note ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). Applied to this case, the relevant criteria support final approval of the proposed Settlement.

### 1. Plaintiffs and Class Counsel Have Adequately Represented the Class.

Final approval is favored because Plaintiffs and Class Counsel conducted an adequate investigation and discovery prior to reaching a settlement. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). The greater the amount of discovery that has been completed, the more the parties have 'a clear view of the strengths and weaknesses of their cases." *Young*, 2007 WL 951821, at *4.

Plaintiffs conducted extensive investigation and discovery prior to mediation. (*See* discussion *supra* Part II.B.) Plaintiffs' counsel obtained

documents and information from Defendant sufficient to realistically assess Plaintiffs' claims, and proceed with class certification if necessary. (Bainer Decl. ¶ 3-4; *see also* discussion *supra* Part II.B.) Plaintiffs' counsel analyzed and evaluated Defendant's policy and procedure documents, time and payroll records, information from relevant witnesses, as well as conducting an independent investigation as described above. (Bainer Decl. ¶ 3-4; *see also* discussion *supra* Part II.B.) Based on the information and record developed through extensive investigation and discovery, Plaintiff's counsel was able to act intelligently and effectively in negotiating the proposed Settlement. (Bainer Decl. ¶ 7; *see also* discussion *supra* Part II.B.)

Additionally, Class Counsel was able to adequately represent the class in negotiating the Settlement as a result of Class Counsel's experience in handling similar class actions. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378. Class Counsel has handled multiple wage-and-hour class-action lawsuits in both state and federal courts. (*See* Bainer Decl. 8.) Through its investigation, review of discovery materials, litigation, and the mediation, Plaintiffs' counsel had an intimate understanding of the instant litigation and believes the Settlement is fair, adequate, and reasonable. (Bainer Decl. 7.)

### 2.     The Settlement Was Negotiated at Arm's Length.

Evidence that a settlement agreement is the result of genuine arm's length bargaining with a private mediator after factual discovery also supports a conclusion that the Settlement is fair. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (2016) ("We put a good deal of stock in the product of an arms-length non-collusive, negotiated resolution."); *see also In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference

of a collusive settlement. Here, the Settlement was reached after extensive negotiations, with the assistance of an experienced mediator, Tripper Ortman. The Parties continue to negotiate terms of Settlement after reaching the agreement in principle with Mr. Ortman. Additionally, the Parties actively participated in Early Neutral Evaluation with Judge Lopez. (*See* discussion *supra* Part II.C.) These discussions were at arm's length and non-collusive, and conducted by experienced class-action counsel. Plaintiffs, represented by The Bainer Law Firm, and in the related cases by associated counsel, were represented by seasoned class-action counsel who litigate wage-and-hour claims through certification and on the merits, and have considerable experience with those types of cases. (*See* discussion *supra* Part V.B.1.) Defendant was represented by Little Mendelson, P.C., a nationally recognized employment defense law firm. Therefore, these circumstances also favor a final determination that this Settlement is fair, adequate, and reasonable.

### 3. The Relief Provided to the Class Is Adequate.

To determine whether the class relief is adequate, the Court should consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).[7]

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (C.D. Cal. 2010) (internal quotation mark omitted). Plaintiffs evaluated the claims in light of the risks of continued litigation in order to determine a reasonable range of class relief. Although Plaintiffs believe the class claims are strong, Defendant disputes liability and, except for settlement purposes, the

---

[7] There are no separate agreements for the Court to consider in granting final approval of the proposed Settlement.

1  appropriateness of class certification. Defendant has vigorously defended the

2  action, and the related cases, and, absent settlement, would continue to do so.

3  Plaintiffs recognize the risks they face in proceeding with litigation, and that they

4  may have encountered. For example, although many courts have certified classes

5  in wage-and-hour actions,[8] some courts have disagreed, finding that wage-and-

6

7

8

9

10

11

12  [8] *See Brinker Rest, Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012) ("Claims

13  alleging that a uniform policy consistently applied to a group of employees is in

14  violation of the wage and hour laws are of the sort routinely, and properly, found

     suitable for class treatment . . . The theory of liability – that [the employer] has a

15  uniform policy, and that that policy, measured against wage order requirements,

16  allegedly violates the law - is by its nature a common question eminently suited for

     class treatment."). Litigation of wage and hour claims on class-wide bases (1)

17  encourages the vigorous enforcement of wage laws (*Smith v. Super. Ct.*, 39 Cal. 4th

18  77, 82 (2006)); (2) "eliminates the possibility of repetitious litigation" (*Sav-on

     Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319, 340 (2004)); (3) affords

19  small claimants a method of obtaining redress (*id.*); (4) "deter[s] and redress[es]

20  alleged wrongdoing" (*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1298

     (2010)); (5) "avoid[s] windfalls to defendants" (*Brinker*, 53 Cal. 4th at 1054); (6)

21  avoids "inconsistent or varying adjudications" (*Aguiar v. Cintas Corp. No. 2*, 144

22  Cal. App. 4th 121, 129 (2006)); and (7) alleviates the concerns of employees about

     retaliation (*Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443, 462-63

23  (2007); *Jaimez*, 181 Cal. App. 4th at 1308). These policies are so strongly favored

24  that "class certifications should not be denied [in wage and hour cases] so long as

     the absent class members' rights are adequately protected." *Richmond v. Dart

25  Industries, Inc.*, 29 Cal. 3d 462, 474 (1981); *see also Sav-On Drug Stores, Inc.*, 34

26  Cal. 4th at 329 (upholding certification of an overtime class action based on a

     showing that all plaintiffs performed jobs that were highly standardized, and as a

27  result, class members performed essentially the same tasks, most of which were

28  non-exempt as a matter of law).

hour cases present too many individualized issues.[2] The risk of being denied class certification favors settlement, because when class certification is denied, there is little incentive for parties to proceed where individual damages are relatively small. *See, e.g.*, *In re Baycol Cases I & II*, 51 Cal. 4th 751, 758 (2011) (explaining that a dismissal of class claims is effectively the "death knell" of the case, despite survival of individual claims).

The proposed Settlement in the amount of $1,750,000.00 is therefore reasonable when balanced against the strengths and weaknesses of Plaintiffs' claims. If the putative class is not certified, the value of Plaintiffs' and the Class Members' individual cases would be reduced to a fraction of the Settlement value. Many Class Members would also be shut out of recovery for the wage-and-hour violations Plaintiffs contend that Defendant committed. Although Plaintiffs and their counsel strongly believe in the underlying merit of their claims, they recognize the challenges of proceeding.

Considering the costs, risks, and delay of trial and appeal, the effectiveness

---

[2] *See Duran v. U.S. Bank Nat'l Assoc.*, 59 Cal. 4th 1, 31 (2014) (reversing a verdict from a class trial); *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (affirming denial of certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, No. LA CV12-07794JAK (SH1), 2013 WL 5302217, at *11-12 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, No. LA CV10-08486 JAK (FFMx), 2012 WL 1366052, at *22 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, No. SACV 07-00452, 2012 WL 5473764, at *2 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods).

of the proposed method of distributing relief to the class, and the terms of the proposed award of attorneys' fees, the relief provided to the class is adequate.

### 4.     The Settlement Does Not Provide Preferential Treatment to Plaintiff or Any Segment of the Class.

The fourth factor for the Court to examine is whether the proposed settlement provides preferential treatment to any class member. "[T]o the extent feasible, the plan should provide class members who suffered greater harm and who have stronger claims a larger share of the distributable settlement amount." *Hendricks v. StarKist Co.*, Case No. 13-cv-007290HSG, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015). Here, the proposed Settlement poses no risk of unequal treatment of any Settlement Class Member. Each Settlement Class Member's Individual Settlement Payment is calculated on a pro rata basis based on his or her workweeks. (Stipulation, ¶¶ 3.6, 3.6.1.)

The Settlement also provides for incentive awards to Plaintiffs in an amount not to exceed $5,000.00 each, subject to Court approval. (Stipulation, ¶ 3.5.1.) As set forth in Plaintiffs' Motion for Attorneys' Fees and Costs and Service Awards, this modest payment is appropriate based on the substantial risk assumed by and the services undertaken by Plaintiffs on behalf of the Class Members. Furthermore, the Ninth Circuit has recognized that service awards to named plaintiffs in class actions are permissible. *See Staton*, 327 F.3d at 977. Thus, the absence of any preferential treatment supports final approval.

### 5.     Class Members' Reaction to the Proposed Settlement.

In assessing the fairness, adequacy, and reasonableness of the Settlement, courts also consider the reaction of the class. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004).

This factor also favors final approval. To date no class members have objected to the Settlement. (Claims Administrator Decl. ¶ 14.) Additionally, only 220, representing approximately 1% of the overall class, have requested exclusion. (Claims Administrator Decl. ¶ 13.) Given the overall positive reaction from Settlement Class Members, final approval of the Settlement is appropriate.

## VI.   THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ONLY

A party seeking to certify a class must demonstrate that she has met the "four threshold requirements of Federal Rule of Civil Procedure 23(a): (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation." *Levya v. Medline Indus., Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Once these prerequisites are satisfied, the Court must consider whether the proposed class can be maintained under at least one of the requirements of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Plaintiff, here, seeks certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Given that the elements of liability need not be proven and for settlement purposes, the proposed class satisfies each of these requirements.

### A. The Proposed Class Is Sufficiently Numerous.

The numerosity requirement is satisfied when "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least 40 members. *Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010); *see also Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity presumed at 40 class members). A reasonable estimate of the number of purported

1  class members is sufficient to meet the numerosity requirement. *In re Badger*
2  *Mountain Irrigation Dist. Sec. Litig.*, 143 F.R.D. 693, 697 (W.D. Wash. 1992).
3  Here, the proposed class consists in excess of 23,000 persons who Defendant
4  employed in the State of California as a non-exempt, hourly employee at any time
5  from August 1, 2014 through October 11, 2019. (Claims Administrator Decl. ¶
6  10.) Thus, the class is sufficiently numerous so as to make joinder impracticable.

### B. Common Questions of Law and Fact Predominate.

The commonality requirement is also met for settlement purposes. In this regard, Plaintiffs are not required to show commonality on *every* factual and legal issue; rather, "for purposes of Rule 23(a)(2), even a single common question will do." *Wal-Mart Stores, Inc.*, 564 U.S. at 359 (internal quotations and alterations omitted). Further, courts have found that "[t]he existence of shared legal issues with divergent factual predicates is sufficient, to satisfy commonality under Rule 23 as is a common core of salient facts coupled with disparate legal remedies within the class." *Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC 2008 WL 4156364, at *5 (N.D. Cal. Sept. 5, 2008). Individualized or deviating facts will not preclude class treatment if most class members were subjected to a policy in a way that gives rise to consistent liability or lack thereof. *See Arrendondo v. Delano Farms Co.*, No. CV-F 09-1247 LJO DLB, 2011 WL 1486612, at *15 (E.D. Cal. Apr. 19, 2011).

Importantly, "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019); *see also Amchem Prods.,* 521 U.S. 591, 618-20 (1997).  Thus, where the matter is being settled, a showing of manageability at trial is unnecessary. *Id*.

Commonality is satisfied in this case.  Plaintiffs contend that their and the Settlement Class Members' claims arise from common, uniform practices which involve common questions of law and fact, including but not limited to: (1) whether employees performed work off the clock as a result of Defendant's practice of requiring its employees to submit to security checks (2) whether employees were not provided with timely meal and rest breaks as a result of the security checks; (3) whether employees were not provided with off-duty meal breaks due to the requirements of Defendant's management employees; (4) whether employees were required to perform additional tasks while off the clock; (5) whether employees were required to incur unreimbursed business expenses; (6) as a result, whether Defendant willfully failed to pay all wages owed to employees at the time of separation, failed to provide accurate wage statements and maintain required records; and (7) whether Defendant committed these or other unfair and unlawful business practices in violation of Business & Professions Code § 17200.  As Plaintiff contends Defendant's policies and practices, and the questions of law and fact they raise, apply uniformly to all Class Members, certification is appropriate for settlement purposes.[10]

### C. Plaintiffs' Claims Are Typical of Those of the Class.

"Like the commonality requirement, the typicality requirement is 'permissive.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). The typicality requirement is satisfied where the named plaintiff is a member of the proposed class and her claims are "reasonably coextensive with those of the absent class members," though "they need not be substantially identical." Fed. R. Civ. P. 23(a)(3); *Hanlon*, 150 F.3d at 1020; *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Typicality turns on "whether other members have the same or

---

[10] The Ninth Circuit recently confirmed in *In re Hyundai & Kia Fuel Economy Litigation* that the relaxed predominance standard is met where a settlement concerns a "cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] alleged conduct.  926 F.3d at 559. Because this is not a matter wherein "individual stakes are high and disparities among class members great," common questions predominate.  *Id.*

similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon*, 976 F.2d at 508).

Here, Plaintiffs contend that they and all non-exempt employees of Defendant were subject to the same allegedly non-compliant policies and practices. For example, Plaintiffs allege Defendant failed to provide her and the Class Members lawful meal and rest breaks and associated premium pay, failed to pay all overtime and minimum wages due, failed to timely pay wages and associated waiting time penalties, and failed to issue accurate wage statements.  As a result, Plaintiffs contend that they and the Class Members suffered the same or similar injuries, resulting from the same or similar conduct by Defendant.  The proposed class thus meets the typicality requirement for settlement purposes.

## D. Plaintiffs and Their Counsel Adequately Represented the Settlement Class Members.

A class representative must be able to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied if (1) the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.  There are no conflicts between Plaintiff and her counsel and the Class Members. Plaintiffs have worked closely with their counsel throughout the case to ensure that the putative class is adequately represented. Moreover, Plaintiffs and her counsel have shown they will vigorously represent the interests of the Class Members and have sufficient resources to enable them to vigorously pursue the claims on behalf of the class. Further, as described above, Plaintiffs' Counsel is experienced in wage-and-hour class litigation and are qualified to serve as class counsel. (*See* discussion *supra* Part V.B.1.)

### E. A Class Action Is a Superior Method of Adjudication.

Rule 23(b)(3)'s superiority requirement is satisfied where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency," or where "no reasonable alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). In the context of a class action settlement, "manageability is not a concern [because …] by definition, there will be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 556-67. With 23,767 Settlement Class Members, and in light of the predominance of common legal and factual issues, a class action is a superior method of adjudication in this context. Additionally, although the value of individual claims is not insignificant, the amount in controversy is not nearly enough to incentivize individual action. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010). The class action device therefore provides the superior procedural vehicle to resolve this controversy.

Accordingly, the class should be finally certified for settlement purposes.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

DATED:  January 23, 2020            **THE BAINER LAW FIRM**


By:   /s/ Matthew R. Bainer
MATTHEW R. BAINER
Attorneys for Plaintiffs