1  Matthew R. Bainer, Esq. (SBN 220972)
   **THE BAINER LAW FIRM**
2  1901 Harrison St., Suite 1100
   Oakland, California 94612
3  Telephone:  (510) 922-1802
   Facsimile:   (510) 844-7701
4  mbainer@bainerlawfirm.com

5  Attorneys for Plaintiffs
   *Additional Counsel listed on next page*
6

7

8                 **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 RAYCHEAL TELLEZ, QUIANNA          Case No. 3:18-cv-02480-CAB-LL
   TERRY, SHERRI MEDEIROS, and
12 DANIELLE REZENDES, an             **NOTICE OF MOTION AND MOTION**
   individually, on behalf of other  **FOR ATTORNEYS' FEES AND**
13 members of the general public      **COSTS, AND CLASS**
   similarly situated, and as aggrieved **REPRESENTATIVE SERVICE**
14 employees pursuant to the Private  **AWARDS; MEMORANDUM OF**
   Attorneys General Act ("PAGA"),   **POINTS AND AUTHORITIES IN**
15                                    **SUPPORT THEREOF**
               Plaintiff,
16                                    Date:       February 6, 2020
        vs.                          Time:       10:00 a.m.
17                                   Courtroom:   4C
   ULTA SALON, COSMETICS &
18 FRAGRANCE, INC., a Delaware
   corporation; and DOES 1 through 50,
19 inclusive,

20             Defendants.

21

22

23

24

25

26

27

28

1   PETER R. DION-KINDEM, SBN 95267
**THE DION-KINDEM LAW FIRM**
2   **PETER R. DION-KINDEM, P. C.**
2945 Townsgate Road, Suite 200
3   Westlake Village, CA 91361
Telephone: (818) 883-4900
4   Email: peter@dion-kindemlaw.com

5   LONNIE C. BLANCHARD, III, SBN 93530
**THE BLANCHARD LAW GROUP, APC**
6   3579 East Foothill Blvd., No. 338
Pasadena, CA 91107
7   Telephone: (213) 599-8255
Fax: (213) 402-3949
8   Email: lonnieblanchard@gmail.com

9   JAMES R. HAWKINS, SBN 192925
ISANDRA FERNANDEZ, SBN 220482
10  **JAMES HAWKINS APLC**
9880 Research Drive, Suite 200
11  Irvine, CA 92618
Telephone: 949.387.7200
12  Fax No.: 949.387.6676

13  MATTHEW J. MATERN, SBN 159798
JOSHUA D. BOXER, SBN 226712
14  **MATERN LAW GROUP, PC**
1230 Rosecrans Avenue, Suite 200
15  Manhattan Beach, CA 90266
Telephone: 310.531.1900
16  Facsimile: 310.531.1901
Emails: mmatern@maternlawgroup.com
17   mgordon@maternlawgroup.com

18

19

20

21

22

23

24

25

26

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 6, 2020, or as soon thereafter as counsel may be heard in Courtroom 4C of the United States District Court for the Southern District of California, located at 221 West Broadway, Suite 4165, San Diego, California 92101, Plaintiffs Raycheal Tellez, Sherri Medeiros, Quianna Terry, and Danielle Rezendes will, and hereby do, move this Court for an order awarding attorneys' fees in the amount of $437,500, which is 25% of the settlement in the above-captioned matter, reimbursement of expenses in the amount of $13,534.2 to Class Counsel, and Class Representative Service Awards in the amount of $5,000.00 to each Plaintiff in the above-captioned matter.

This uncontested motion will be made on the following grounds: (l) pursuant to the terms of the Joint Stipulation Re: Class Action Settlement ("Stipulation"), Class Counsel is entitled to attorneys' fees up to thirty-three percent (33%), or $583,333.33, of the Gross Settlement Amount for attorneys' fees (though they seek only 25% or $473,500), and reimbursement of reasonable costs in an amount not to exceed $25,000.00, subject to Court approval; (2) pursuant to the terms of the Stipulation, Plaintiffs are each entitled to a Class Representative Service Award not to exceed $5,000.00, subject to Court approval; (3) pursuant to Labor Code § 1194 and Code of Civil Procedure § 1021.5, Class Counsel is entitled to attorneys' fees and costs; and (4) all attorneys' fees and costs incurred in the prosecution of this Action were reasonable and necessary to prosecute the claims and achieve a favorable outcome on behalf of the Class Members.

This motion will be based on this Notice, the attached Memorandum of Points and Authorities, the Declarations of Matthew J. Matern, Matthew R. Bainer, Peter R. Dion-Kindem, Lonnie Blanchard, James R. Hawkins, Plaintiff Danielle Rezendes, Plaintiff Raycheal Tellez, Plaintiff Quianna Terry, and Plaintiff Sherri Medeiros and all exhibits thereto, including the Stipulation, the documents and

1   records on file in this matter, and such additional arguments, authorities, evidence,

2   and other matters as may be presented by the parties hereafter.

3

4   DATED:  January 23, 2020          **THE BAINER LAW FIRM**

5

6                                   By:   /s/ Matthew R. Bainer
                                         Matthew R. Bainer
7                                        Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Raycheal Tellez, Sherri Medeiros, Quianna Terry, and Danielle Rezendes (collectively, "Plaintiffs") move this Court for an order awarding Class Counsel attorneys' fees in the amount of $437,500, which represents 25% of the total settlement in the above-captioned matter, along with costs in the amount of $13,534.2, and for an order awarding Class Representative Service Awards to Plaintiffs in the amount of $5,000 each.

Plaintiffs are entitled to reasonable attorneys' fees under Labor Code §1194 and Code of Civil Procedure § 1021.5 and the common fund doctrine. While the amount of fees requested exceeds Class Counsel's lodestar, application of a multiplier would be appropriate based on the contingent nature of the fee agreement. Furthermore, the requested fees are reasonable as a percentage of the common fund, as they represent one-quarter of the non-reversionary settlement fund.

In addition, Class Counsel's request for reimbursement of costs and expenses is reasonable, as those costs and expenses were reasonably incurred in connection with the prosecution and settlement of this matter and thus are reimbursable.

Lastly, Plaintiffs' request for a Class Representative Service Award in the amount of $5,000 per Plaintiff is reasonable. Plaintiffs put the interests of the Class Members ahead of their own, invested considerable time and effort in assisting in the prosecution of this matter, have agreed to broader individual releases than applicable to other Class Members, and have agreed to forego future employment with Defendant. Plaintiffs have assumed significant risk by serving as Class Representatives.

Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Attorneys' Fees and Costs and Class Representative Service Awards.

## II.    RELEVANT BACKGROUND

### A. Factual and Procedural Background

This case involves California wage-and-hour claims against Defendant Ulta Salon, Cosmetics & Fragrance, Inc. ("Defendant"), a beauty-supply retail company with locations across California. Plaintiffs' claims flow from the following nucleus of factual allegations:

- Defendant required employees to submit to security checks of their persons and belongings, which, at all times, were conducted off the clock in violation of Defendant's written policies.

- Defendant did not consistently provide non-exempt employees with timely meal or rest breaks, as required under California law, as a result of Defendant's security check policies.

- Defendant did not consistently provide non-exempt employees with off-duty meal breaks, as a result of requirements of Defendant's management-level employees.

- Defendant required certain employees to perform additional work tasks while off-the-clock and/or incur unreimbursed business expenses.

- As a consequence of the above, Defendant failed to pay all terminated employees the correct amount of wages earned, maintain accurate employment records, and provide wage statements.

Based on those factual issues, Plaintiffs brought suits against Defendant in 2018, alleging the following causes of action: (1) unpaid overtime; (2) unpaid minimum wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay wages; (6) failure to provide accurate wage statements; (7) failure to indemnify for incurred business expenses; (8) an enforcement action under the Private Attorneys General Act of 2004 ("PAGA"); and (9) violations of California's Unfair Competition Law ("UCL").

Plaintiffs and Defendant reached a settlement (the "Settlement") of the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

above claims after lengthy negotiations, executing the Stipulation on or around August 14, 2019. The Settlement provided and provides for global resolution of other wage-and hour actions filed against Defendant based on the same facts and legal theories as described above.[1] (*See* Stipulation, ¶ 3.1.) On August 30, 2019, Plaintiffs moved for preliminary approval of the Settlement. (Doc. 32.) On October 11, 2019, the Court granted Plaintiffs' motion for preliminary approval, as well as leave to file a Second Amended Complaint ("SAC") to include the plaintiffs from the related actions that are covered by the Settlement. (Doc. 35.) On November 4, 2019, Plaintiffs filed the SAC to add named plaintiffs. (Doc. 36.)

## B. <u>Discovery and Investigation</u>

As described in Plaintiffs' Motion for Final Approval, filed concurrently herewith and incorporated by reference, Plaintiffs actively investigated and conducted discovery in this matter in order to sufficiently and intelligently assess the merits of their claims, individually and on behalf of the class, as well as evaluate the risks of proceeding to trial, and the adequacy and fairness of the Settlement. Parties to this action exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26. Additionally, Plaintiffs each propounded discovery, to which Defendant responded, in the form of Special Interrogatories and Requests for Production of Documents. Plaintiffs and Defendant also repeatedly met and conferred regarding the scope of Defendant's responses and production and additional information to be provided.  Defendant produced, and Class Counsel reviewed, policy documents, handbooks, wage-and-hour records, thousands of pages of time records, and class contact information. Ultimately, Plaintiffs

---

[1] Those actions are *Rezendes v. Ulta Salon, Cosmetics & Frangrance, Inc.*, Case No. 3:18-cv-0611-JST (N.D. Cal.) (filed in Alameda County Superior Court on August 1, 2018); *Terry v. Ulta Salon, Cosmetics & Fragrance, Inc.*, Case No. 3:18-cv-7683-JCS (N.D. Cal.) (filed in Marin County Superior Court on September 18, 2018); and *Medeiros v. Ulta Salon, Cosmetics & Fragrance, Inc.*, Case No. 2:18-cv-2947-TLN-AC (E.D. Cal.) (filed in Solano County Superior Court on September 25, 2018). These are sometimes referred to herein as the related actions.

received all written discovery necessary to brief a motion for class certification had the case not settled.

Furthermore, in support of the Parties' settlement negotiations and mediation session, Defendant provided data and information regarding the average hourly rate of pay for Class Members, the total approximate number of Class Members who worked during the Class Period, the total number of former employees during the Class Period, and the total number of workweeks worked by Class Members during the Class Period.

Finally, counsel performed an extensive, independent investigation into the claims at issue, including (1) determining the suitability of the putative class representatives through interviews, background investigations, and analyses of employment files and related records; (2) researching wage-and-hour class actions involving similar claims; (3) acquiring information regarding putative Class Members' potential claims, identifying additional witnesses, and obtaining documents in support of Plaintiffs' eventual motion for class certification; (4) obtaining and analyzing Defendant's wage-and-hour policies and procedures; (5) researching the latest case law developments bearing on the theories of liability; (6) researching settlements in similar cases; (7) preparing valuation analyses of claims; and (8) participating in a full-day private mediation session and preparing related memoranda. The document and data exchanges allowed Plaintiffs' Counsel to assess the strengths and weaknesses of the claims against Defendant and the benefits of the proposed Settlement.

### C. Settlement Negotiations

As described in Plaintiffs' Motion for Final Approval, filed concurrently herewith, after exchanging documents and attending an in-person Early Neutral Evaluation with Magistrate Judge Linda Lopez, the parties attended a mediation with Tripper Ortman, Esq., who specializes in mediating employment disputes, including wage-and-hour class actions. As a result of the mediation, the Parties were able to reach an agreement on the principal terms of settlement. The parties

continued to discuss and negotiate the remaining details over the course of several months. These negotiations included discussions with counsel for related cases that have been resolved under the terms of the Settlement. Plaintiffs' counsel in those cases independently reviewed the proposed Settlement and determined that it constituted a satisfactory result for the claims brought on behalf of these class members and for their own clients. At all times, the Parties' negotiations were adversarial and non-collusive. The Settlement is therefore a fair, adequate, and reasonable compromise of the claims at issue.

## III.   ARGUMENT

### A. California Law Governs Plaintiffs' Motion for Attorneys' Fees.

At the conclusion of a successful class action, class counsel may apply to the Court for an award of reasonable attorneys' fees that are authorized by law. *See* Fed. R. Civ. P. 23(h).  Because this Court exercised diversity jurisdiction over this case under the Class Action Fairness Act, California substantive law applies to determining the entitlement and award of reasonable attorneys' fee award. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).  Thus, the Court must apply California substantive law to the calculation of attorneys' fees.  *Gezalyan v. BMW of N. Am., LLC*, 697 F. Supp. 2d 1168, 1170 (C.D. Cal. 2010) ("In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees."); *Gonzalez v. S. Wine & Spirits of Am., Inc.*, 555 F. App'x 704, 704 (9th Cir. 2014) ("The district court abused its discretion in applying federal law instead of California substantive law to the calculation of attorney's fees. Because the district court exercised diversity jurisdiction over this case, California substantive law applies to the calculation of the attorney fee award.").

### B. Counsel Is Entitled to Reasonable Attorneys' Fees Under the California Labor Code and the Private Attorneys General Statute.

Class Counsel is entitled to recover fees and costs pursuant to Labor Code §

1194 and Code of Civil Procedure § 1021.5.

Section 1194 provides:

> [A]ny employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Lab. Code § 1194 (West 2019). Because this litigation culminated in a settlement that provides for a recovery of unpaid wages, including unpaid overtime wages, Plaintiffs are entitled to recover reasonable attorneys' fees and costs under the California Labor Code.

Plaintiffs are also entitled to a fee award under California's private attorney general statute, Code of Civil Procedure § 1021.5. The award of attorney fees is proper under Section 1021.5 if

> (1) plaintiffs' action 'has resulted in the enforcement of an important right affecting the public interest,' (2) 'a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons' and (3) 'the necessity and financial burden of private enforcement are such as to make the award appropriate.'

*Press v. Lucky Stores*, 34 Cal. 3d 311, 317-18 (1983); *see also* Cal. Civ. Proc. Code § 1021.5 (West 2019). The fundamental objective of the statute is "to encourage suits enforcing public policies by providing substantial attorneys' fees to successful litigants in such cases." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2004).

This action resulted in the enforcement of an important right affecting the public interest, as Plaintiffs sought to enforce Class Members' rights to recover statutory wages arising out of Defendant's failure to provide meal periods, failure to authorize and permit rest periods, and failure to pay minimum and overtime wages for all hours worked. *See Moore v. Indian Spring Channel Gold Mining Co.*, 37 Cal. App. 370, 379-380 (1918) (recognizing that the "[d]elay of payment or loss of wages results in deprivation of the necessities of life, suffering inability to meet just

obligations to others, and, in many cases may make the wage earner a charge upon the public."); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1113 (2007) (noting that "health and safety considerations (rather than purely economic injuries) are what motivated the IWC to adopt mandatory meal and rest periods in the first place.").

This case also conferred a significant benefit on a large class of persons.  *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663,703 (2006) (holding that "[a]ttorney fees may be awarded under Code of Civil Procedure section 1021.5 for consumer class action suits benefiting a large number of people.").  The Settlement provides a significant monetary benefit to approximately 22,000 Class Members in that it permits all Class Members to obtain compensation for unpaid wages.

Finally, the necessity and financial burden of private enforcement render an award appropriate.  Without the incentive of an attorneys' fee award, Plaintiffs could not have afforded to hire counsel to pursue this case, as the cost of litigating this matter far outweighed Plaintiffs' potential recovery.  *See Ryan v. Cal. Interscholastic Fed'n*, 94 Cal. App. 4th 1033, 1044 (2001) ("As to the necessity and financial burden of private enforcement, an award is appropriate where the cost of the legal victory transcends the claimant's personal interest; in other words, where the burden of pursuing the litigation is out of proportion to the plaintiff's individual stake in the matter.").

Thus, Plaintiffs are entitled to reasonable fees and costs under Labor Code § 1194 and Code of Civil Procedure § 1021.5.

### C. <u>Plaintiffs' Fee Application is Reasonable.</u>

A district court has broad discretion in assessing the reasonableness of attorneys' fees. *In re FPI/Agretech Securities Litig.*, 105 F.3d 469, 472 (9th Cir.1997). Where a settlement produces a common fund for the benefit of the entire class, as is the case here, the court has discretion to award fees using either

a "percentage-of-recovery" or a "lodestar" method. *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Hanlon v. Chrysler Grp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Regardless of which method is employed, the Court here is "obligated to assure itself that the fees awarded in the agreement were not unreasonably high, so as to ensure that the class members' interests were not compromised in favor of those of class counsel." *Staton*, 327 F.3d at 965. Plaintiffs' request for 25% of the common fund, established for the benefit of approximately 22,000 Class Members, is reasonable under either method.

### i. Plaintiffs' Fee Application Is Reasonable Under the Common-Fund Method.

California and federal courts, have long recognized that, when counsels' efforts result in the creation of a common fund that benefits a class, counsel have an equitable right to be compensated from that fund as a whole. *See, e.g.,Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *Wininger v. SI Mgmt. L.P.*,301 F.3d 1115, 1120 (9th Cir. 2002) (recognizing court's equitable powers to award fees from common fund created by a settlement); *Serrano v. Priest* (*Serrano III*), 20 Cal. 3d 25, 35 (1977) ("[O]ne who expends attorneys' fees in winning a suit which creates a fund from which other derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs") (internal quotation marks omitted). The common-fund doctrine recognizes that attorneys should normally be paid by their clients, and unless attorneys' fees are paid out of the common fund, those who benefit from the attorneys' efforts will be unjustly enriched. *Boeing*, 444 U.S. at 478; *Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917, 943 (1979). Courts therefore exercise their inherent equitable powers to assess attorneys' fees against the entire fund, spreading the cost of those fees among all those who benefit. *Boeing*, 444 U.S. at 478; *Serrano III*, 20 Cal. 3d at 35.

The California Supreme Court has recognized common fund fee awards using a percentage-of-the-fund method for calculating the fee. *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 504 (2016). This Court has found the same. *See, e.g.*, *Hazlin v. Botanical Labs., Inc.*, Case No. 13cv0618-KSC, 2015 WL11237634, at *5-6 (S.D. Cal. May 20, 2015) (ultimately awarding 30% of the common fund). Federal courts often award 25% of the common fund, although the court may depart from this benchmark. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942; *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015). Courts can consider the following factors when determining whether to depart from the 25% benchmark: the nature of the result achieved, the risk involved, the skill and quality of counsel's work, the fee-contingent nature, awards in similar cases, and a crosscheck with the lodestar. *Bellinghausen*, 306 F.R.D. at 260.

Awarding fees as a percentage-of-the-fund here is appropriate. Class members prosecuting their claims often negotiate a contingency-fee arrangement rather than paying their attorneys by the hour. The percentage-of-the-fund method reflects the fee that would have been negotiated by the class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. The common-fund method thus reflects the reality of the market. *See, e.g.*, *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (common fund doctrine gives "the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had it only been feasible"). The percentage approach also incentivizes highly qualified attorneys to bring class actions. *Lealao v. Beneficial Cal.*, 82 Cal. App. 4th 19, 47 (2000); *Melendres v. City of L.A.*, 45 Cal. App. 3d 270, 272-273 (1975) (noting need to encourage attorneys to undertake common fund cases). As the percentage method is "result-oriented rather than process-oriented," it best "approximates the workings of the marketplace" by rewarding counsel for results achieved. *Lealao*, 82 Cal. App. 4th at 48; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261,

1269 (D.C. Cir. 1993) ("A percentage-of-the-fund approach more accurately reflects the economics of litigation practice," which "given the uncertainties and hazards of the litigation, must necessarily be result-oriented") (citations omitted). Furthermore, awarding fees as a percentage of the fund promotes efficient litigation efforts that serve to maximize the size of recovery rather than counsels' lodestar hours. *Swedish Hosp.*, 1 F.3d at 1269.

Here, Plaintiffs request 25% of the common fund—or $437,500—for their attorneys' fees. This amount is reasonable in light of the contingent nature of this case. Plaintiffs' counsel invested hundreds of hours of time, along with costs associated with litigation, to pursue these class and representative claims with no guarantee of payment. (See, Declaration of Matthew R. Bainer, filed in support of concurrently filed Motion for Final Approval of Class Action Settlement "Bainer Decl." ¶ 11-12; Declaration of Matthew J. Matern in Support of Plaintiffs' Motion for Attorneys' Fees and Costs, and a Class Representative Service Award ("Matern Decl.) ¶¶ 8-11, 20-23 & Exs. A-C, 24-27, 34-37; Declaration of James Hawkins ("Hawkins Decl.") ¶ 11-12; Declaration of Peter Dion-Kindem ("Dion-Kindem Decl.") ¶ 16; Declaration of Peter Blanchard "Blanchard Decl." ¶ 12.) Although optimistic about certifying and ultimately prevailing on Plaintiffs' claims, counsel bore significant risk that those claims would not be certified. Moreover, counsel achieved a significant result in obtaining $1,750,000.00 on behalf of approximately 24,000 Class Members. The requested fee is also consistent with the federal benchmark of 25%, and falls in the middle of the "usual range" of 20 to 30 percent for common-fund fee recoveries in courts in the Ninth Circuit. *See In re Bluetooth Litig.*, 654 F.3d at 942; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *see also, e.g.*, *Lemus v. Denny's Inc.*, Case No. 10cv2061-CAB-WVG, 2016 WL 11619873, at *5 (S.D. Cal. May 5, 2016) (awarding 25% of the common fund where counsel's class claims were defeated); *Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073, at *8 (S.D. Cal. Oct. 23, 2015) (awarding 30% of the common fund as

reasonable when compared with the lodestar); *Hazlin*, 2015 WL11237634, at *5-6 (ultimately awarding 30% of the common fund); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, Lead Case Nos. 07 CV 2245 MMA, 08-CV-0128 MMA, 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) (awarding 25% of common fund).

Accordingly, the Court can award Plaintiffs' attorneys' fees from the common-fund, and the requested 25% is reasonable under the circumstances.

### ii.   Plaintiffs' Fee Application Is Reasonable Under the Lodestar Method and Applying a Modest Positive Multiplier.

Under the lodestar method,[2] the court considers a compilation of the time spent and a reasonable hourly compensation of each attorney to evaluate the reasonableness of the fee requested. *See Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615, 622 (2000). The moving party meets its burden in this regard by submitting "declarations evidencing the reasonable hourly rate for their services and establishing the number of hours spent working on the case" as "California case law permits fee awards in the absence of detailed time sheets." *See Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 254-255 (2001); *Dunk v. Ford Motors Co.*, 48 Cal. App. 4th 1794, 1810 (1996); *Nightengale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 103 (1994). The hours spent and the reasonable hourly compensation are computed to arrive at a "lodestar" figure which may then be augmented or diminished by the court taking into account various "multiplier" factors. *See Ramos*, 82 Cal. App. 4th at 622 (citing *Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1977)).

Here, Class Counsel's lodestar is $365,221.25, (Bainer Decl. ¶ 11; Matern Decl. ¶¶ 24-31; Hawkins Decl. ¶ 12; Dion-Kindem Decl. ¶ 16; Blanchard Decl.

---

[2] Federal courts may also use the lodestar to crosscheck the reasonableness of the award under the common-fund method. *Vizcaino*, 290 F.3d at 1050; *Laffitte*, 1 Cal. 5th at 503. Here, a lodestar crosscheck supports that requested fees are reasonable. Counsels' lodestar is 365,221.25. The requested fee of $437,500 is not unreasonably greater than this amount.

¶12.). These hours were necessary and reasonable to achieve the result on behalf of the Class Members. Additionally, the application of a 1.12 multiplier is appropriate based on the contingent nature of the fee agreement. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1130, 1137 (2001). As such, Plaintiffs' request for $437,500, or 25% of the common fund, in attorneys' fees is reasonable.

a.   **Class Counsel's Hours Are Reasonable.**

In determining whether the number of hours expended on the litigation was reasonable, the court must determine that the "time spent was reasonably necessary and that [] counsel made 'a good faith effort to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 n.8 (9th Cir. 1987) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).[3] "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). The district court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112. "An attorney's sworn testimony that, in fact, it took the time claimed '…is evidence of considerable weight on the issue of the time required…'" *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) (quoting *Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988)).

The efforts expended by Class Counsel thus far include, but are not limited to, the following: interviewing Plaintiffs; reviewing documents provided by Plaintiffs and other publicly-available documents; conducting legal research regarding Defendant's wage and hour policies and practices; drafting the

---

[3] In determining the reasonable number of hours expended on the litigation, "the district court should take into account the reality that some amount of duplicative work is 'inherent in the process of litigating over time.'" *Stetson*, 821 F.3d at 1166 (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

MOTION FOR ATTORNEYS' FEES AND COSTS
AND SERVICE AWARDS
CASE NO. 3:18-cv-02480-CAB-LL

Complaints; drafting written discovery; drafting a meet-and-confer correspondence regarding Defendant's written discovery responses; participating in Early Neutral Evaluation; noticing the deposition of Defendant's Rule 30(b)(6) witness and meeting and conferring with Defendant's counsel regarding same; engaging in numerous conferences and correspondence with Defendant's counsel; reviewing of documents produced by Defendant, including policy documents, handbooks, wage-and-hour records, thousands of pages of time records, and class contact information; conducting a damages analysis and preparing a Mediation Brief in advance of the mediation; attending the mediation; participating in further settlement discussions with Defendant; drafting the settlement agreement and exhibits thereto, including the Class Notice; drafting Plaintiff's Motion for Preliminary Approval; drafting Plaintiff's Motion for Attorneys' Fees and Costs and a Class Representative Service Award; drafting Plaintiffs' Motion for Final Approval; and communicating with the Claims Administrator and Defendant's counsel regarding the settlement administration process.

### b. Class Counsel's Hourly Rates Are Reasonable.

Class Counsel's hours are to be multiplied by a "reasonable hourly rate" to generate the lodestar figure. *In re Consumer Privacy Cases,* 175 Cal. App. 4th 545, 556 (2009). To determine the reasonable hourly rate, the court must look to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Courts may "find hourly rates reasonable based on evidence of other courts approving similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010). "Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990);

1    *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (the submission of

2    "declarations stating that the rate was the prevailing market rate in the relevant

3    community [was]… sufficient to establish the appropriate rate for lodestar

4    purposes").

5            Class Counsel's rates are in line with the current prevailing billing rates in

6    the relevant geographic areas. Given the skill and experience of Class Counsel in

7    this case and the excellent result achieved for the Class, Class Counsel's hourly

8    rates are reasonable.

9            **iii.    Application of a Positive Multiplier Is Appropriate.**

10           After the court determines the lodestar value, the court may enhance the

11   lodestar by applying a multiplier to take into account the contingent nature and risk

12   associated with the action. *Ketchum*, 24 Cal. 4th 1122 at 1137; *Graham,* 34 Cal.

13   4th at 582.  Some of the factors courts consider when determining whether to apply

14   a multiplier are: "(1) the novelty and difficulty of the questions involved, (2) the

15   skill displayed in presenting them, (3) the extent to which the nature of the

16   litigation precluded other employment by the attorneys, (4) the contingent nature of

17   the fee award." *See Ketchum*, 24 Cal. 4th 1122 at 1132 (citations omitted).

18           In *Ketchum*, the California Supreme Court held that fee enhancement in

19   contingency cases is necessary to (1) fully compensate counsel for the "loan" of

20   legal services in light of the inherent high risk of "default" posed by losing the case,

21   and (2) encourage competent counsel to take on fee award cases. *Ketchum*, 24

22   Cal.4th at 1132-1133.  As the court noted, "A lawyer who both bears the risk of not

23   being paid and provides legal services is not receiving the fair market value of his

24   work if he is paid only for the second of these functions.  If he is paid no more,

25   competent counsel will be reluctant to accept fee award cases." *Id.* at 1133

26   (citations omitted); *see Greene v. Dillingham Construction N.A., Inc.*, 101 Cal.

27   App. 4th 418, 426 (2002) (holding that trial court erred by refusing to consider

28   contingent risk as a factor in the decision to apply a multiplier).  Similarly, the

Ninth Circuit has held that "[t]he district court *must* apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.'" *Stetson*, 821 F.3d at 1166 (emphasis in original) (quoting *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016)).

Here, application of a positive multiplier is appropriate. Class Counsel has been litigating this case with no payment, spending significant time and resources which could have been directed towards other cases. Class Counsel agreed to litigate this case on a contingent-fee basis, and in the process assumed considerable risk given the uncertain proposition these types of cases entail. Apart from the general risks attendant to contingency litigation, Class Counsel here assumed considerable additional risk. Although Class Counsel were optimistic about the chances of certifying Plaintiffs' claims and prevailing at trial on any certified claims, they recognize nevertheless that if the litigation had continued, they may have encountered significant legal and factual hurdles that could have prevented the Class from obtaining full recovery for their claims, or, in the worst-case scenario, any recovery at all perhaps even any recovery.

Accordingly, Plaintiffs respectfully request that the Court award Class Counsel the requested fees of $437,500.00 based on Class Counsel's lodestar, with the application of a 1.12 multiplier.

### D. Class Counsel's Out-Of-Pocket Expenses Should Be Reimbursed.

Because Plaintiffs' claim for attorneys' fees arises under California substantive law, the Court also applies California law on costs. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064 (9th Cir. 2003). In California, attorneys are reimbursed for out-of-pocket expenses "such as '1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices;

8) experts, consultants, and investigators; and 9) mediation fees.'" *Johnson v. Gen. Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338, *20-*21 (C.D. Cal. June 17, 2013) (quoting *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (both courts awarding the requested expenses, including for expert witnesses, mediation, photocopying and computerized research).

To date, Class Counsel has expended approximately $13,534.2, which includes court fees, service costs, expert costs, the cost of class notice, and travel-related expenses that would normally be billed to a paying client. Bainer Decl. ¶ 12; Matern Decl. ¶ 43; Hawkins Decl. ¶ 15; Dion-Kidion Decl. ¶ 19; Blanchard Decl. ¶ 15. These costs are precisely the sort that are reimbursable because they are reasonable and were necessarily incurred during the case's pendency.

### E. The Proposed Class Representative Service Award Is Fair and Reasonable.

"Incentive awards are fairly typical in class action cases . . . Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et al., Newberg on Class Actions* § 11:38 (4th ed. 2008)). These payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (describing the service award as an incentive to the class representative). So long as the service award does not create a conflict of interest between the representatives and class members, modest payments to named plaintiffs for their services as class representatives are customary and generally approved. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995).

A service award of $5,000.00 is presumptively reasonable. *Garcia v. Cty. Of Los Angeles*, No. CV153549FMOVBKX, 2018 WL 3218212, at *7 (C.D. Cal. May 21, 2018). The proposed service award also is fair and reasonable under the five-

factor test set forth by the court in *Van Vranken*.  Under the *Van Vranken* test, courts "consider: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken*, 901 F. Supp. at 299 (citations omitted).  However, not all factors need to be present.  Rather, the court may weigh the factors and award fees that are "just and reasonable under the circumstances." *See*, *e.g.*, *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014) (citing *Van Vranken*, 901 F. Supp. at 299).

First, the service award is justified in light of the reputational risk that Plaintiffs each assumed by litigating claims against a former employer. *See Billinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267-68 (N.D. Cal. 2015) (finding "personal detriment" upon testimony that future employers can easily learn that a prospective employee served as a plaintiff through the internet); *Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 1029(CM), 2011 WL 5148650, at *7, *20 (S.D.N.Y. Oct. 28, 2011) ("[T]he fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person.  Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members.").  Employers commonly screen employee candidates to determine whether they have ever filed suit, and employee candidates who might be branded "litigious" are likely to be screened out of the process.  In fact, an entire industry has developed for providing employers with background information on employee candidates.  By bringing this action against an employer, Plaintiffs assumed considerable reputational risk that

may impact their ability to find employment in the future.  *See La Fleur v. Med. Mgmt. Intern, Inc.*, No. 13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff in part for attesting to their fear that the lawsuit will harm their future job prospects in the industry).

Second, the service award should be awarded to each Plaintiff because they "remained fully involved and expended considerable time and energy during the course of the litigation."  *See In re Toys 'R' Us-Del FACTA Litig.*, 295 F.R.D. at 471 (citation omitted).  As detailed in their declarations, Plaintiffs expended considerable time and effort assisting their attorneys with the prosecution of the class claims, and those unique contributions to the litigation should be rewarded.

Third, the service award is appropriate because Plaintiff lost earnings and incurred out-of-pocket expenses, but "will not gain any benefit beyond that [s]he would receive as an ordinary class member."  *See In re Toys "R" Us FACTA Litig.*, 295 F.R.D. at 472; *Van Vranken*, 901 F. Supp. at 299 (holding that a substantial award is appropriate where a class representative's claim made up "only a fraction of the common fund"); Here, absent the service award, Plaintiff will recover no more than other Class Members, despite undergoing personal sacrifice in bringing this suit on behalf of the Class.

Due to Plaintiffs' effort, commitment, and personal sacrifice, all Class Members can now benefit from a $1,750,000.00 settlement.  Thus, the proposed $5,000 service award for Plaintiffs' services as class representative, her assistance in prosecuting the claims, and reviewing the proposed settlement to ensure that its terms are fair and provide adequate relief for the Class Members, and the risk of being branded "litigious" by prospective employers, is reasonable and deserved.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award reasonable attorneys' fees in the amount of $437,500, costs in the amount of $13,534.2, and $5000 to each named Plaintiff as Class Representative Service

1    Awards.

2    DATED:  January 23, 2020       **THE BAINER LAW FIRM**

3

4                      By:    /s/ Matthew R. Bainer

5                            MATTHEW R. BAINER
                           Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28