# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYCHAEL TELLEZ, QUIANNA TERRY, SHERRI MEDEIROS, and DANIELLE REZENDES, individually, and on behalf of other members of the general public similarly situated, and as aggrieved employees pursuant to the Private Attorney General Act ("PAGA"),<br><br>Plaintiffs,<br><br>v.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 18cv2480-CAB-LL<br><br>**ORDER GRANTING (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [Doc. No. 37], and (2) GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS [Doc. No. 38]** |

This matter is before the Court on Plaintiffs' unopposed motion for final approval of class action settlement [Doc. No. 37] and Plaintiffs' motion for attorneys' fees and costs, and class representative service awards [Doc. No. 38]. The Court held a hearing on these motions on February 6, 2020. Matthew R. Bainer, Esq. appeared for Plaintiffs. Lena K. Sims, Esq. appeared for Defendant. As discussed below, the motion for Final Approval of the Class Settlement is **GRANTED**. The motion for attorneys' fees and costs, and class

representative service awards is **GRANTED IN PART**.

## BACKGROUND

This case involves California wage-and-hour claims against Defendant, a beauty-supply retail company. Plaintiffs' claims flow from the following nucleus of factual allegations:

- Ulta required employees to submit to security checks of their persons and belongings which, at times, were conducted off the clock in contravention of Ulta's written policies.
- Ulta did not consistently provide non-exempt employees with a timely meal or rest breaks, as required under California Law, as a result of its security check policies.
- Ulta also did not consistently provide non-exempt employees with off-duty meal breaks, as a result of requirements of management level employees.
- Ulta required certain employees to perform additional work tasks while off-the-clock and/or incur unreimbursed business expenses.
- As a derivative result of the above allegations, Ulta failed to pay all terminated employees the correct amount of wages earned, maintain accurate employment records and provide accurate wage statements.

Based on those factual issues, Plaintiffs brought suits against Defendant in 2018, alleging the following causes of action: (1) unpaid overtime; (2) unpaid minimum wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay wages; (6) failure to provide accurate wage statements; (7) failure to indemnify for incurred business expenses; (8) an enforcement action under the Private Attorneys General Act of 2004 ("PAGA"); and (9) violations of California's Unfair Competition Law ("UCL").

Plaintiff Raycheal Tellez originally filed this action in the Superior Court of California on October 5, 2018. [Doc. No. 1-3.] On October 29, 2018, Defendant removed the action to this Court. [Doc. No. 1.] On August 30, 2019, the parties filed a motion for preliminary approval of the Proposed Settlement and the Proposed Notice of Settlement to

class members ("Notice"). [Doc. No. 32.] This Settlement provides for the global resolution of this action and three related actions.[1] Pursuant to the terms of the Settlement Agreement[2], the Parties agreed to allow Plaintiff leave to file a Second Amended Complaint naming the Plaintiffs from those three cases, all signatories to the settlement agreement on their own behalf, as named Plaintiffs to this action to allow the settlement of all involved parties to be approved in a single proceeding in front of this Court. (Settlement Agreement ¶ 3.1 and Ex. "A") On October 11, 2019, the Court issued an Order Preliminarily Approving Class Settlement, and granted Plaintiff leave to file the Second Amended Complaint. [Doc. No. 35.]

The Court also approved the proposed form of Notice and directed Class Counsel to serve that Notice to each Class Member no later than November 25, 2019. [Doc. No. 35 at ¶9.] The Court set the Final Approval Hearing on the Proposed Settlement for February 6, 2020 at 10 a.m. [Doc. No. 35 at ¶7.] Currently before the Court is the Class' Motion for Final Approval of Class Action Settlement [Doc. No. 37], Motion for Attorneys' Fees and Costs, and Class Representative Service Awards [Doc. No. 38], and the Declaration of Lindsay Kline Regarding Notice and Settlement Administration [Doc. No. 39].

## OVERVIEW OF THE SETTLEMENT

**A. Class Definition.**

The proposed class consists of all persons employed by Defendant as non-exempt employees in the State of California at any point in time from August 1, 2014 through October 11, 2019 and who did not ask to be excluded. (Stipulation, ¶¶ 1.8, 1.29; Doc. 35,

---

[1] These three related actions, *Medeiros v. Ulta Salon, Cosmetics & Fragrance, Inc.* United States District Court, Eastern District of California Case No. 2:18-cv-02947-TLN-AC, *Terry v. Ulta Salon, Cosmetics & Fragrance, Inc.* United States District Court, Northern District of California Case No. 3:18-cv-07683-JST and *Rezendes v. Ulta Salon, Cosmetics & Fragrance, Inc.* United States District Court, Northern District of California Case No. 3:18-cv-06111-JST brought causes of action based primarily on, and overlapping with the causes of action and theories of recovery plead in this case. (Bainer Decl. ¶2.)

[2] The Settlement Agreement is entitled Joint Stipulation Re: Class Action Settlement and is located at Doc. No. 32-1, pp. 17-54.

at 3.)

**B. Settlement Terms.**

Under the proposed Settlement, the claims of all Class Members who did not timely request exclusion from the Settlement ("Settlement Class Members") shall be settled for the Gross Maximum Settlement Amount of one million seven hundred and fifty thousand dollars ($1,750,000.00). (Stipulation, ¶ 3.2.) This amount includes all Individual Settlement Payments to Settlement Class Members; the LWDA Payment; Class Counsel Fees and Expenses as awarded by the Court; the Class Representative Incentive Award as awarded by the Court; Claims Administration Costs; and all federal, state, and local taxes. (Stipulation, ¶ 3.2.) This amount is non-reversionary. (*See* Stipulation, ¶ 3.6.2.4.) The Gross Maximum Settlement Amount shall be allocated as follows:

1. Individual Settlement Awards.

The Net Settlement Amount[3] shall be distributed to the Settlement Class based on the number of workweeks during two separate periods. (Stipulation, ¶¶ 3.6, 3.6.1.) The Net Settlement Amount is to be divided into two funds, 88.57% to "Settlement Fund – Post Release Net" ("Post-Release Funds") and 11.43% to "Settlement Fund – Pre Release Net" ("Pre-Release Funds"). (Stipulation, ¶ 3.6.1.) Payments from the Post-Release Funds shall be calculated based on workweeks from December 30, 2016 through the date of preliminary approval. (Stipulation, ¶ 3.6.1.) Payments from the Pre-Release Funds shall be calculated based on workweeks worked by Settlement Class Members from August 1, 2014 to December 30, 2016. (Stipulation, ¶ 3.6.1.) The Individual Settlement Payments are apportioned 50% to wages ("Wage Component") and 50% to interest, penalties, and any other claimed damages. (Stipulation, ¶ 3.6.1.) Payments are subject to tax withholdings, including employment taxes on the Wage Component. (Stipulation, ¶ 3.6.1.) If an Individual Settlement Award is uncashed after two mailings, the Claims Administrator

---

[3] The Net Settlement Amount equals the Gross Maximum Settlement Amount less Class Counsel Fees and Expenses, the Class Representative Incentive Awards, the LWDA Payment, and the Claims Administration costs. (Stipulation, ¶3.6.)

shall transfer the uncashed funds, plus any accrued interest, to an interest-bearing account to be distributed to the Legal Aid Society of San Diego, Inc. (Stipulation, ¶ 3.6.2.4.) Settlement Class Members are *not* required to submit claims for the Individual Settlement Awards. (Stipulation, ¶ 3.9.)

### 2. LWDA Payment.

Subject to the Court's approval, fifty thousand dollars ($50,000.00) from the Gross Maximum Settlement Amount shall be allocated to penalties under the Private Attorneys General Act ("PAGA"). (Stipulation, ¶ 3.4.) Of this amount, seventy-five percent (75%), or thirty-seven thousand five hundred dollars ($37,500.00) is to be paid directly to the LWDA. (Stipulation, 3.4.) The remaining twenty-five percent (25%), or twelve thousand five hundred dollars ($12,500.00) is allocated to the aggrieved employees and, pursuant to the Settlement, is included in the Net Settlement Amount. (Stipulation, ¶¶ 3.4, 3.6) Plaintiff's Counsel has provided the required notice of the proposed approval of this settlement, and release of Plaintiff's PAGA claims, to the LWDA, (Bainer Decl. ¶8, Ex. B.)

### 3. Class Counsel Fees and Expenses.

Subject to Court approval, Defendant agreed not to oppose Class Counsel seeking up to thirty-three percent (33%) or $583,333.33 of the Gross Maximum Settlement Amount for attorneys' fees and up to twenty-five thousand dollars ($25,000.00) for reimbursement of Class Counsel's costs in prosecuting this matter. (Stipulation, ¶ 3.3.) As outlined in the concurrently filed Motion for Attorney's Fees, Costs and Incentive awards, Plaintiff's Counsel has nonetheless elected to seek only twenty-five percent (25%) or $437,500 of the Gross Maximum Settlement Amount for attorneys' fees.

### 4. Class Representative Incentive Award.

Subject to Court approval, in exchange for release of their claims, and in recognition of the time and effort in litigating this matter, Plaintiffs shall be entitled to payment of a Class Representative Incentive Award up to and not to exceed five thousand dollars ($5,000.00) each. (Stipulation, ¶ 3.5.1.) The Class Representative Incentive Award shall

be paid from the Gross Maximum Settlement Amount; any difference between the awards sought and the amounts awarded by the Court shall be allocated to the Net Settlement Amount. (Stipulation, ¶ 3.5.1.)

      5. Claims Administration Costs.

Claims Administration Costs, in an amount not to exceed sixty-nine thousand nine hundred and ninety-five dollars ($69,995.00), shall be paid to the Claims Administrator from the Gross Maximum Settlement Amount. (Stipulation, ¶ 3.12.)

      6. Taxes.

The Claims Administrator shall withhold taxes from payments made under the terms of the Settlement and shall issue W-2 forms for the Wage Component of the Individual Settlement Awards and 1099 forms for other payments made. (Stipulation, ¶¶ 3.5.1, 3.6.1, 3.6.3.)

      7. Release

Upon entry of final judgment by the Court, Plaintiffs and all Settlement Class Members will be deemed to have released Defendant and the Released Parties, as defined in the Settlement, from wage-and-hour claims arising from their employment with Defendant from August 1, 2014 through October 11, 2019. (Stipulation, ¶¶ 3.17.2, 3.17.3.) The Released Parties are defined as Defendant and "its insurers, parents, subsidiaries, affiliated companies, charitable organizations, partners, trustees, directors, officers, agents, attorneys, servants, and employees, past and present and each of them." (Stipulation, ¶ 3.17.1.)

**C. Notice to Class Members**

Pursuant to the Preliminary Approval Order, the Class Notice described the lawsuit and settlement, instructed Class Members how to participate in or opt-out of the settlement, instructed Class members how to object to the settlement, provided details on the final approval hearing and contact information for class counsel, and instructed Class Members how to obtain court records. [Doc. No. 35 at 4-5.]

On November 13, 2019, counsel for Defendant provided Simpluris, the "Settlement

Administrator" or "Claims Administrator," with a mailing list ("Class List") containing the name, last known address, Social Security number, and pertinent employment information during the Class Period for the Class Members. [Doc. No. 39 at ¶6.] The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. The NCOA contains requested changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Notice Packets. *Id.* at ¶7.

On November 25, 2019, Notice Packets were mailed to twenty-three thousand nine hundred eighty-seven (23,987) Class Members with addresses contained in the Class List via First Class mail or updated via the NCOA search. [*Id.* at ¶8; Exhibit A.] If a Class Member's Notice Packet was returned by the USPS as undeliverable and without a forwarding address, Simpluris performed an advanced address search (i.e. skip trace) on all of these addresses by using Accurint, a reputable research tool owned by Lexis-Nexis. Simpluris used the Class Member's name and previous address to locate a current address. Through the advanced address searches, Simpluris was able to locate one thousand seven hundred and seventeen (1,717) updated addresses and Simpluris promptly mailed Notice Packets to those updated addresses. Ultimately, there were four hundred and forty eight (448) Notice Packets that were undeliverable. [*Id.* at ¶9.]

As of this date, there are twenty-three thousand seven hundred and sixty-seven (23,767) Class Members who will be paid their portion of the Net Settlement Fund. This number excludes the Class Members who opted out. *Id.* at ¶10.

The Net Settlement Fund of $1,054,785.18 available to pay Class Members was determined by subtracting the proposed Class Counsel's Fees ($437,500.00), Class Counsel's Costs Payment ($25,000.00), Named Plaintiff Service Awards ($20,000.00), the PAGA LWDA Payment ($37,500.00), Employer Taxes ($105,214.82) and the Administration Costs ($70,000.00) from the Maximum Settlement Amount

($1,750,000.00). *Id.* at ¶11. The average estimated payment is $44.38 and the highest estimated payment is $222.45. *Id.* at ¶12.

As of this date, Simpluris has received two hundred and twenty (220) valid Requests for Exclusion from Class Members. *Id.* at ¶13. As of this date, Simpluris has not received any Objections to the Settlement from Class Members. *Id.* at ¶14. As of this date, Simpluris has received one (1) Dispute of Dates of Employment from a Class Member. The Dispute was denied by Counsel on the basis that the Class Member was seeking to include time worked outside of the relevant class period. *Id.* at ¶15.

Simpluris' total costs for services in connection with the administration of this Settlement, including fees incurred and anticipated future costs for completion of the administration, are $70,000.00.[4] Simpluris' work in connection with this matter will continue with the calculation of the settlement checks, issuance and mailing of those settlement checks, etc., and to do the necessary tax reporting on such payments. *Id.* at ¶16.

The Court finds that this notice procedure afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of the Class Members. The Court finds and determines that the notice provided in this case was the best practicable, which sufficiently satisfied the requirements of law and due process. Finally, the Court **APPROVES** the Settlement Administration costs in the amount of $69,995 as reasonable.

**MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

**1. Legal Standard.**

Courts require a higher standard of fairness when settlement takes place prior to class certification to ensure class counsel and defendants have not colluded in settling the case. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ultimately, "[t]he court's

---

[4] The Settlement Agreement, however, states that the Claims Administrator shall be paid a <u>maximum</u> of $69,995. (Stipulation, ¶3.12.)

8

intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

A court considers several factors in determining whether a proposed settlement is "fair, reasonable, and adequate" under Rule 23(e). Such factors may include: (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial; (3) the stage of the proceedings (investigation, discovery, and research completed); (4) the settlement amount; (5) whether the class has been fairly and adequately represented during settlement negotiations; and (6) the reaction of the class to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The Court need only consider some of these factors—namely, those designed to protect absentees. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) (overruled in part on other grounds).

Judicial policy favors settlement in class actions and other forms of complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

**2. Analysis.**

A. Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation.

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In other words:

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "it has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

Plaintiffs contend that continued litigation would have been costly with uncertain recovery. [Doc. No. 37-1 at 8.] While Plaintiffs strongly believe in the case, individual issues could have been a factor in determining damages and possible denial of class certification, which would have resulted in the Settlement Class receiving nothing. *Id.* at 8-9. Therefore, this factor weighs in favor of approving the settlement.

B. The Risk of Maintaining Class Action Status Through Trial.

Pursuant to Rule 23, the Court may revisit a prior order granting certification of a class at any time before final judgment. See Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (finding that the complexity of the case weighed in favor of approving the settlement).

Plaintiffs contend there were uncertainties as to individual issues, especially with regard to the wage and hour claims, that could have prevented the matter from going forward as a class action through trial. [Doc. No. 37 at 18-19, Doc. No. 37-2 at 9.] Therefore, this factor weighs in favor of approving the settlement.

C. The Stage of the Proceedings.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV*, 221 F.R.D. at 528. In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v.*

*Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (*quoting In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).

Based on the parties' representations, it appears that the Settlement Agreement resulted from arms-length negotiations, and was not the result of collusion. The parties negotiated the proposed Settlement at arm's length with the assistance of an experienced mediator, Tripper Ortman, Esq. (Bainer Decl., Doc. No. 32-1, ¶ 6.) Significant factual investigation and discovery allowed Class Counsel—who is experienced in wage-and-hour class-action litigation—to assess the strengths and weaknesses of the claims against Defendant and the benefit of the proposed Settlement. (*Id.*) During the course of the litigation, Class Counsel reviewed hundreds of pages of documents produced by Defendant, including relevant wage-and-hour policy documents, obtained a sampling of timekeeping and payroll records, and prepared a damages model based on expert analysis of the time and payroll data and information obtained from Defendant. *Id.*, ¶ 4-5. Plaintiff and Class Counsel therefore had adequate information to gauge the value of the Settlement Class Members' claims and assess whether the proposed Settlement is fair, adequate, and reasonable. Therefore, this factor weighs in favor of approving the settlement.

D. The Settlement Amount.

"In assessing the consideration obtained by the class members in a class action settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV,* 221 F.R.D. at 527 (internal citation and quotation marks omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citations omitted).

Here, the Gross Settlement Amount is $1,750,000.00, with a Net Settlement Fund of at least $1,054,785.18 available to pay Class Members. [Doc. No. 39, ¶11.] The average estimated payment is $44.38 and the highest estimated payment is $222.45. *Id.* at ¶12. Plaintiffs contend that the settlement amount is reasonable when balanced against the strengths and weaknesses of Plaintiffs' claims:

> If the putative class is not certified, the value of Plaintiffs' and the Class Members' individual cases would be reduced to a fraction of the Settlement value. Many Class Members would also be shut out of recovery for the wage-and-hour violations Plaintiffs contend that Defendant committed. Although Plaintiffs and their counsel strongly believe in the underlying merit of their claims, they recognize the challenges of proceeding.

[Doc. No. 37 at 20.]

Thus, this factor favors approval.

E. Fair and Adequate Representation During Settlement Negotiations.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV*, 221 F.R.D. at 528 (internal quotation marks and citation omitted). Class Counsel assert that they have extensive experience in class action litigation, having represented numerous class action lawsuits, and having been certified by numerous courts as adequate class counsel. [Doc. No. 37 at 16-17. Moreover, Class Counsel believe the terms of the settlement are fair, reasonable, and adequate to the Class members. [Doc. No 37 at 17.] Accordingly, this factor weighs in favor of approval of the settlement.

F. Class Reaction to the Proposed Settlement.

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered. *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class did not file an opposition).

To date, no class members have objected to the Settlement. [Doc. No. 39 at ¶14.] Additionally, only 220, representing approximately 1% of the overall class, have requested

exclusion. *Id.* at ¶13. Given the overall positive reaction from Settlement Class Members, this factor also favors final approval.

### 3. Conclusion.

Because the factors outlined above favor approving the Settlement, the Court GRANTS the motion and finds that the settlement is "fair, reasonable, and adequate" under Rule 23(e).

## MOTION FOR ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS

Plaintiffs seek attorneys' fees in the amount of $437,500, reimbursement of expenses in the amount of $13,534.20 to Class Counsel, and Class Representative Service Awards in the amount of $5,000 to each Plaintiff in this action. The uncontested motion is made on the following grounds:

> (l) pursuant to the terms of the Joint Stipulation Re: Class Action Settlement ("Stipulation"), Class Counsel is entitled to attorneys' fees up to thirty-three percent (33%), or $583,333.33, of the Gross Settlement Amount for attorneys' fees (though they seek only 25% or $473,500), and reimbursement of reasonable costs in an amount not to exceed $25,000.00, subject to Court approval; (2) pursuant to the terms of the Stipulation, Plaintiffs are each entitled to a Class Representative Service Award not to exceed $5,000.00, subject to Court approval; (3) pursuant to Labor Code § 1194 and Code of Civil Procedure § 1021.5, Class Counsel is entitled to attorneys' fees and costs; and (4) all attorneys' fees and costs incurred in the prosecution of this Action were reasonable and necessary to prosecute the claims and achieve a favorable outcome on behalf of the Class Members.

[Doc. No. 38 at 3.]

### 1. Attorneys' Fees

Courts have an independent obligation to ensure that the amounts requested for attorneys' fees and any class representative service award, like the settlement, are reasonable. *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Where a settlement produces a common fund for the benefit of the entire class, courts have the discretion to employ a "percentage of recovery method." *Id*. at 942. Typically, courts calculate 25% of the fund as a "bench mark" for a reasonable fee award.

13
18cv2480-CAB-LL

*Id*. Injunctive relief should generally be excluded from the value of the common fund when calculating attorneys' fees because most often the value of the injunctive relief is not measurable. *Staton v. Boeing Co*., 327 F.3d 938, 945–46 (9th Cir. 2003).

"The 25% benchmark rate, although a starting point for the analysis, may be inappropriate in some cases." *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002). Thus, court are encouraged to cross-check this method by employing the "lodestar method" as well. *In re Bluetooth*, 654 F.3d at 949.

In the "lodestar method," the court multiplies the number of hours the prevailing party reasonably expended by a reasonable hourly rate for the work. *In re Bluetooth*, 654 F.3d at 941. The hourly rate may be adjusted for the experience of the attorney. *Id*. "Time spent obtaining an attorneys' fee in common fund cases is not compensable because it does not benefit the plaintiff class." *In re Wash. Public Power Supply Sys. Secs. Litig*., 19 F.3d 1291, 1299 (9th Cir. 1994). The resulting amount is "presumptively reasonable." *In re Bluetooth,* 654 F.3d at 949. However, "the district court...should exclude from the initial fee calculation hours that were not 'reasonable expended.' " *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001) (*Hensley v. Eckerhart*, 401 U.S. 424, 433–34 (1983)). The court may then adjust this presumptively reasonable amount upward or downward by an appropriate positive or negative multiplier reflecting a whole host of reasonableness factors including the quality of the representation, the complexity and novelty of the issues, the risk of nonpayment, and, foremost in considerations, the benefit achieved for the class. *In re Bluetooth*, 654 F.3d at 942. The court may find a fee request is excessive but that there is no further evidence class counsel betrayed class interests for its own benefit, and thus uphold the settlement agreement, while lowering the fee award. *Id*.

Turning first to the percentage-based method of recovery, the Court notes that, although the Gross Settlement Amount is $1,750,000, with 23,767 Class Members, the average estimated payment to Class Members is only $44.38. Thus, although Plaintiff counsel is only seeking 25% of the Gross Settlement Amount, it seems excessive given the small estimated payment to the Class Members. Furthermore, the settlement was

reached fairly early in the litigation, and there was no motion practice or formal discovery such as depositions. Therefore, the Court finds that, in this case, a lodestar calculation is the superior method for calculating attorneys' fees.

To date, Class Counsel expended 476.25 hours on this matter and Counsel's hourly rates range from $675 to $950. (Bainer Decl. ¶ 11; Matern Decl. ¶¶ 24-31; Hawkins Decl. ¶ 12; Dion-Kindem Decl. ¶ 16; Blanchard Decl. ¶12.) The Court has reviewed Counsels' declarations and finds that the number of hours billed were necessary and reasonable to achieve the result on behalf of the Class Members. Most of the hourly rates, however, appear high, especially given that settlement was reached early. Therefore, the Court will apply an hourly rate of $750. When the hourly rate ($750) is multiplied by the number of hours (476.25), the result is a lodestar of $357,187.50. Finally, while Plaintiffs' counsel requests a positive multiplier, the Court declines to do so, as this case was not particularly complex and was settled fairly early. Therefore, the Court **APPROVES** attorneys' fees in the amount of **$357,187.50**.

### 2. Litigation Expenses.

Class Counsel seek reimbursement of their costs in the amount of $13,534.20. [Doc. No. 38 at 20.] Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Class counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (*citing Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *Staton*, 327 F.3d at 974.

Pursuant to the Settlement Agreement, Class Counsel may seek reimbursement of reasonable costs in an amount not to exceed $25,000. (Stipulation, ¶3.3.) Here, Class Counsel's costs were only $13,534.20, which includes court fees, service costs, expert costs, the cost of class notice, and travel-related expenses that would normally be billed to a paying client. (Bainer Decl. ¶ 12; Matern Decl. ¶ 43; Hawkins Decl. ¶ 15; Dion-

Kidion Decl. ¶ 19; Blanchard Decl. ¶ 15.) Accordingly, because Class Counsel's out-of-pocket expenses were reasonably incurred in connection with the prosecution of this litigation, and were advanced by Class Counsel for the benefit of the Class, the Court **APPROVES** costs in the amount of **$13,534.20**.

**2. Class Representative Service Awards.**

Plaintiffs Raycheal Tellez, Sherri Medeiros, Quianna Terry, and Danielle Rezendes each seek a class representative service award of $5,000. "[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class actions cases" and "do not, by themselves, create an impermissible conflict between class members and their representative[ ]." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Nonetheless, the court has an obligation to assure that the amount requested is fair. *In re Bluetooth*, 654 F.3d at 941. "The propriety of incentive payments is arguably at its height when the award represents a fraction of the class representative's likely damages....But we should be more dubious of incentive payments when they make the class representative whole, or (as here) even more than whole." *In re Dry Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013).

Here, the named Plaintiffs state that they have all assisted Class Counsel by providing information and documents to Counsel. [Doc. Nos. 38-5, 38-6, 38-7 and 38-8.] Plaintiff Tellez estimates she spent over 20 hours assisting counsel. [Doc. No. 38-5 at ¶6.] Plaintiff Rezendes estimates she has spent approximately 10 hours assisting counsel. [Doc. No. 38-6 at ¶5.] The other plaintiffs do not provide a time estimate. [See Doc. Nos. 38-7 and 38-8.] The Court finds that a service award of $5,000 is excessive, as it would be over 100 times the average payment to Class Members ($44.38). In addition, there was no significant burden on the named Plaintiffs, as the case was settled fairly early. Therefore, the Court finds the following service awards to be reasonable and APPROVED: Raychael Tellez -- $2,000.00; Danielle Rezendes -- $1,500.00; Quianna Terry -- $1,000.00; Sherri Medeiros -- $1,000.00.

16

18cv2480-CAB-LL

## CONCLUSION

For the reasons set forth above, the Court **HEREBY ORDERS**:

1. The Court **GRANTS** Plaintiffs' motion for final approval of class action settlement pursuant to Federal Rule of Civil Procedure 23(e). The Court finds that the proposed settlement appears to be the product of serious, informed, arms-length negotiations, and that the settlement was entered into in good faith, and that Plaintiffs have satisfied the standards for final approval of a class action Settlement under federal law.

2. The Court **APPROVES** the Claims Administration costs in the amount **$69,995.00**.

3. The Court **APPROVES** the LWDA payment and employer taxes payment pursuant to the terms of the Settlement Agreement.

4. The Court **GRANTS IN PART** Plaintiff's motion for attorneys' fees and costs and class representative service awards as follows:

   a. The Court **APPROVES** Plaintiffs' request for an award of attorneys' fees in the amount of **$357,187.50**.

   b. The Court **APPROVES** the requested costs in the amount of **$13,534.20**.

   c. The Court **APPROVES** class representative service awards as follows: Raychael Tellez -- **$2,000.00**; Danielle Rezendes -- **$1,500.00**; Quianna Terry -- **$1,000.00**; Sherri Medeiros -- **$1,000.00.**

5. Plaintiffs' counsel shall submit a proposed judgment for the Court's review and execution no later than **February 18, 2020**.

Dated: February 10, 2020

Hon. Cathy Ann Bencivengo
United States District Judge